# FEDERAL DEPOSIT INSURANCE CORPORATION
# *v.* MUTUAL COMMUNICATIONS
# ASSOCIATES, INC., ET AL.
# (AC 20525)

Lavery, C. J., and Schaller and Spear, Js.

Argued May 10—officially released October 23, 2001

*Michael S. Lynch,* for the appellants (defendant Guardian Systems, Inc., et al.).

*Michael J. Mannion,* for the appellee (substitute plaintiff Fairway Asset Management, Inc.).

*Opinion*

SPEAR, J. The defendants Jerome G. Terracino and Guardian Systems, Inc. (Guardian), appeal from the deficiency judgment rendered against them and their codefendants, Mutual Communications Associates, Inc. (Mutual), Richard T. DeMarsico and Robert Rossman (Rossman), subsequent to a judgment of foreclosure. The defendants[1] claim that the court improperly (1) concluded that there was insufficient evidence to find that Rossman's attorney was acting as Rossman's agent when he purchased a promissory note and assigned it to a company controlled by Rossman's wife, (2) failed to apply the equitable rule that the conduct of a wife may be presumed to be for the benefit of her husband, (3) failed to conclude that the note could not be enforced after Rossman acquired it, (4) rendered judgment in favor of Fairway for the full amount due and (5) rendered judgment against the defendants on their

---

[1] The defendants on appeal are Terracino and Guardian. We refer in this opinion to those defendants as the defendants.

cross claim and counterclaim. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On July 19, 1991, Mutual entered into a loan agreement with Brookfield Bank (Brookfield) to borrow $270,000. Mutual, through two of its corporate officers, DeMarsico and Terracino, signed a promissory note for the loan amount. Mutual secured the debt by a mortgage on one of its properties. DeMarsico, Terracino and Rossman, another corporate officer, signed personal guarantees as well. Terracino and Rossman signed an additional guarantee as principals and officers of Guardian, an alarm company in which they were the only shareholders.

On May 8, 1992, the Federal Deposit Insurance Corporation (FDIC) took possession of Brookfield's assets, including the promissory note, mortgage and guarantees. At about the same time, Mutual defaulted on the loan. On or about November 30, 1994, the FDIC commenced a foreclosure action against Mutual and the other defendants. A judgment of foreclosure by sale was rendered on December 16, 1996.

Thereafter, the judgment was opened and a judgment of strict foreclosure was rendered with law days commencing March 25, 1997. Prior to the judgment of strict foreclosure, JLM Services Corporation (JLM) succeeded the FDIC as plaintiff, and title vested in JLM when Mutual failed to redeem its equity within the set law days.

JLM filed a motion for a deficiency judgment on April 1, 1997. While the motion was pending, JLM assigned the note, guarantees and deficiency claim to Rossman's attorney and friend, Andrew Buzzi, Jr., as trustee.[2] Buzzi

[2] In a letter of disclosure from Buzzi to Rossman dated July 23, 1997, Buzzi stated that he acted as trustee for the Catherine Rossman Trust.

then assigned them to a limited liability company, Consolidated Asset Management, LLC (Consolidated), which he owned with Rossman's wife. Thereafter, Consolidated assigned the note, guarantees and deficiency claim to Fairway Asset Management, Inc. (Fairway), the substituted plaintiff and judgment creditor.

The defendants filed three special defenses, a cross complaint and a counterclaim in response to the motion for a deficiency judgment. The special defenses, as amended, alleged facts that occurred subsequent to the judgment of strict foreclosure. The defendants claimed that Rossman breached the fiduciary duty that he owed them because of his role in assigning the note to Consolidated and Fairway's failure to pursue a mortgage it held on Rossman's property to reduce the deficiency claim. In the third special defense, the defendants claimed that the note was not enforceable because it was assigned after the judgment had been rendered and the law days had passed. The counterclaim and cross complaint were based on the same facts as the special defenses and requested a judgment that Fairway and its predecessors could enforce the note only to claim a proportionate contribution toward funds actually paid on behalf of Rossman for the note, or a judgment declaring the note null and void.

The court granted the motion for a deficiency judgment. It rejected the third special defense and concluded that there was insufficient evidence to find that either Buzzi or Catherine Rossman acted as Rossman's agent, and, therefore, there was no need to address the defendants' other claims premised on a theory of agency. The court also concluded that the defendants had not met their burden of proof on the counterclaim and cross claim. This appeal followed. Additional facts will be provided as necessary.

I

The defendants claim that the court improperly concluded that there was insufficient evidence on which to base a finding that Buzzi acted as Rossman's agent when Buzzi purchased the promissory note as trustee for the Catherine Rossman Trust and assigned the note to Consolidated. The defendants claim that certain findings of fact made by the court are clearly erroneous and entirely inconsistent with the evidence produced at the hearing, specifically, the findings that (1) Rossman's efforts to purchase the note from JLM were unsuccessful, (2) Buzzi, as trustee, purchased the note from JLM and (3) Rossman never owned the note. We disagree.

The court found the following facts by a fair preponderance of the evidence. In June, 1997, Buzzi unsuccessfully attempted, on behalf of Rossman, to negotiate a purchase of the note, mortgages and deficiency from JLM. On July 7, 1997, Buzzi, as trustee, purchased the note, guarantees and deficiency claim from JLM. On July 23, 1997, Buzzi, as trustee, sold the same to Consolidated, of which he and Catherine Rossman were officers. Because Rossman was Buzzi's client in July, 1997, Buzzi disclosed the transaction to him in a letter dated July 23, 1997. Rossman signed the letter, which acknowledged the disclosure and sought to continue the attorney-client relationship with Buzzi. Catherine Rossman formed Consolidated to protect the joint assets that she held with her husband, intending to pursue a judgment against Guardian and Terracino. Consolidated sold the note, guarantees and deficiency to Fairway in October, 1998. Rossman never owned the note, and there was no evidence of an agreement with Fairway not to pursue the judgment against him.

"An appellate court's review of a trial court's decision is circumscribed by the appropriate standard of review. . . . To the extent that the trial court has made findings

of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Bugryn* v. *Bristol*, 63 Conn. App. 98, 103, 774 A.2d 1042, cert. denied, 256 Conn. 927, 776 A.2d 1143 (2001).

Agency normally is a question of fact. *Hallas* v. *Boehmke & Dobosz, Inc.*, 239 Conn. 658, 674, 686 A.2d 491 (1997). "[T]he three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. . . . A principal is generally liable for the authorized acts of his agent . . . ." (Citations omitted; internal quotation marks omitted.) Id., 673.

Our careful review of the record reveals more than ample evidence to support the factual findings that Rossman's efforts to purchase the note were unsuccessful, that Buzzi, as trustee, purchased the note from JLM and that Rossman never owned the note. Although the court did not make a finding as to the individual or entity that Buzzi represented as trustee when he purchased the note, Rossman testified that he did not request or authorize Buzzi to acquire the note as his trustee, that he never had any direct or indirect ownership interest in the note, that he did not participate in the formation of Consolidated, that he did not have a

legal ownership interest in Consolidated, that he did not authorize, encourage or in any way delegate to his wife or Buzzi the authority to act on his behalf in their ownership interest in Consolidated and that he never had an agreement with his wife or Buzzi that gave him any say in the purchase, holding or sale of the note by Consolidated. That testimony is consistent with the testimony of Buzzi and Catherine Rossman. Furthermore, the disclosure letter, which was admitted into evidence at the hearing, expressly stated that Buzzi purchased the note from JLM as trustee for the Catherine Rossman trust, and the defendants provided no documentary evidence indicating otherwise.

"The trial court, as the finder of fact, is in the best position to assess the credibility of the witnesses testifying before it." (Internal quotation marks omitted.) *Rund* v. *Melillo*, 63 Conn. App. 216, 222, 772 A.2d 774 (2001). Moreover, "[w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached." (Internal quotation marks omitted.) *Granger* v. *A. Aiudi & Sons*, 60 Conn. App. 36, 41, 758 A.2d 417, cert. denied, 255 Conn. 902, 762 A.2d 908 (2000). On the entire evidence, we are not left with the definite and firm conviction that a mistake has been committed. Accordingly, we conclude that the court's findings of fact were not clearly erroneous.[3]

## II

The defendants next claim that the court, in finding that Rossman did not purchase the note, improperly applied the law of agency and concluded that the actions of Catherine Rossman, individually or by virtue

[3] The defendants' arguments, although appealing, rest on factual claims that the trial court rejected. We cannot substitute our view of the evidence for the trial court's finding that Rossman's wife and attorney did not act on behalf of him, a finding that is not clearly erroneous.

of her ownership of and involvement in Consolidated, were not tantamount to a purchase by Rossman. They argue, pursuant to *Skolnick* v. *Skolnick*, 131 Conn. 561, 41 A.2d 452 (1945), that, as a matter of *public policy*, the conduct of a wife may be presumed to be for the benefit of her husband. We disagree.

Because "the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Davies* v. *General Tours, Inc.*, 63 Conn. App. 17, 21, 774 A.2d 1063, cert. granted on other grounds, 256 Conn. 926, 776 A.2d 1143 (2001) (appeal withdrawn October 18, 2001).

Marital status does not, in and of itself, prove the agency relationship. *Bolmer* v. *Kocet*, 6 Conn. App. 595, 611, 507 A.2d 129 (1986); see also *Lovesky* v. *Zeligzon*, 20 Conn. App. 139, 144, 565 A.2d 1 (1989). A person's status as a wife, without more, cannot permit a reasonable inference that a husband's knowledge was imparted to her. *Bolmer* v. *Kocet*, supra, 611. "It [is] but one circumstance to be considered bearing upon [the] issue." *Cyclone Fence Co.* v. *McAviney*, 121 Conn. 656, 659, 186 A. 635 (1936).

The court, citing these well established principles of law, properly concluded that the marital relationship and the benefit to Rossman, standing alone, were insufficient to create the presumption that Catherine Rossman acted as her husband's agent. This conclusion is supported by the testimony described in part I of this opinion indicating that Rossman did not authorize either Buzzi or Catherine Rossman to act as his agent. Accordingly, we reject the defendants' claim and find the trial court's conclusions to be legally and logically correct and properly supported by the facts.

The defendants assert that the court improperly failed to apply the equitable rule enunciated in *Skolnick* v. *Skolnick*, supra, 131 Conn. 564. In *Skolnick*, a mortgage foreclosure action, the defendant and his father were tenants in common of a jointly mortgaged property. Seven years after executing the mortgage, the holder of the mortgage threatened to foreclose. The defendant drew and delivered a check to his wife, the plaintiff, who endorsed the check to the holder. The holder assigned the mortgage to the plaintiff at the request of the plaintiff's husband. The plaintiff then commenced a mortgage foreclosure action against her husband and his father. One of the questions before the court was whether a tenant in common who purchases an encumbrance against his property holds the encumbrance as a trustee for both himself and his cotenant. In its analysis, the court cited the "well recognized" rule, grounded in public policy, that the purchase of such an encumbrance by a tenant in common's wife is tantamount to a purchase by the cotenant himself. See id., 564.

*Skolnick*, however, is distinguishable from the present case. In *Skolnick*, the funds used to purchase the encumbrance were those of the cotenant husband, whose wife merely endorsed his check and was assigned the property by the holder at his request. Here, by contrast, it was Buzzi as trustee, not Rossman, who purchased the note from JLM and assigned it to Consolidated, a company in which Rossman had no ownership interest. Moreover, the defendants in *Skolnick* were the comakers of the note and mortgage, whereas here, Rossman was not a maker of the note; he only guaranteed it, and his wife did not acquire it directly.

Furthermore, *Skolnick* relied for legal authority on four very early cases from other jurisdictions. Although our Supreme Court has not expressly overruled *Skolnick*, we cannot conclude that the principle recognized in *Skolnick* that "when a spouse of a tenant in common

is the purchaser the same trust arises"; id.; necessarily applies in the present context. We have found no reported Connecticut case citing *Skolnick* since that opinion was issued in 1945. Even more significantly, our courts have issued several opinions since *Skolnick* that rely on a theory of agency and reflect a more contemporary approach to the legal ramifications of the marital relationship. See *Botticello* v. *Stefanovicz*, 177 Conn. 22, 26, 411 A.2d 16 (1979); *Commission on Human Rights & Opportunities* v. *Veneri*, 157 Conn. 20, 24, 244 A.2d 401 (1968); *Iodice* v. *Rusnak*, 143 Conn. 244, 247, 121 A.2d 275 (1956); *Bolmer* v. *Kocet*, supra, 6 Conn. App. 611; *Lovesky* v. *Zeligzon*, supra, 20 Conn. App. 144. We, therefore, conclude that the court properly applied the law of agency in the circumstances here.

## III

The defendants' remaining claims that the court improperly (1) failed to conclude that the note could not be enforced after its acquisition by Rossman, (2) rendered judgment in favor of Fairway for the full amount due and (3) rendered judgment against the defendants on their cross claim and counterclaim all rest on the premise that Buzzi or Catherine Rossman acted as Rossman's agent when the note was acquired by Buzzi, as trustee, and later by Consolidated. Given our conclusions in parts I and II of this opinion as to the absence of an agency relationship between Rossman and either Buzzi or Catherine Rossman, we decline to review those claims.

The judgment is affirmed.

In this opinion SCHALLER, J., concurred.

LAVERY, C. J., dissenting. I respectfully dissent from the majority opinion. I would conclude, on the basis of the facts found by the trial court, that it is inequitable

and contrary to public policy to allow Robert Rossman's attorney, Andrew Buzzi, Jr., and Rossman's spouse, Catherine Rossman, to purchase the promissory note, guarantees and deficiency judgment at 10 percent of its face value for the purpose of protecting Robert Rossman from the deficiency judgment, and then to seek payment based on its face value from two of the other guarantors.

I do not quarrel with either the majority or the trial court's legal analysis of agency and how it applies to the facts in this case; rather, I am relying on equity. If Robert Rossman had himself purchased the note, guarantees and deficiency judgment, he would be subject to a contribution obligation to his fellow guarantors. Under the law of suretyship, when they guaranteed the bank's loan to Mutual Communications Associates, Inc., Guardian Systems, Inc. (Guardian), Richard T. DeMarsico, Jerome G. Terracino and Robert Rossman became cosureties.[1]

"Equity does not permit one tenant in common to buy in an outstanding title or incumbrance, and hold it for his exclusive benefit to the prejudice of his cotenants. Such a confidential relation with respect to the common property is said to exist between such tenants that it would be inequitable to allow one of them to do with respect to the property that which would be prejudicial to the others. *Van Horne* v. *Fonda*, 5 Johns. Ch. (N.Y.) 388, 407 [1821]; *Venable* v. *Beauchamp*, 3 Dana [33 Ky.] 321 [1835]; *Coburn* v. *Page*, 105 Me. 458, 461, 74 Atl. 1026 [1909]; *Rothwell* v. *Dewees*, 2 Black (67 U.S.) 613, 618 [1862].

"A tenant in common who thus purchases an outstanding incumbrance or title is generally said to hold

---

[1] Restatement (Third), Suretyship and Guaranty § 53 (3), pp. 227–28 (1996), provides in relevant part: "In the absence of agreement between or among them, secondary obligors for the same underlying obligation are cosureties . . . ."

it in trust for all the cotenants in proportion to their respective shares of the common property. His cotenants, within a reasonable time, may elect whether they will contribute their equitable share and secure the benefit of the purchase. If they do not elect to contribute, the purchaser cannot compel them to do so, except to the extent of their interest in the common property." *Scanlon* v. *Parish*, 85 Conn. 379, 381, 82 A. 969 (1912).

I conclude that, as a result of their status as cosureties on the original note, Robert Rossman, DeMarsico, Guardian and Terracino had fiduciary duties to each other with respect to the opportunity to reacquire the note. Section 55, comment a, p. 236, of the Restatement (Third), Suretyship and Guaranty, provides in relevant part: "When secondary obligors are cosureties . . . the relationship between them is such that they should share the cost of performance of their secondary obligations." An illustration contained in the same section explains the situation more precisely: "P borrows $1,000 from C. S1 and S2 are cosureties for P. S1 and S2 agree that the contributive share of S1 is $600 and [that] of S2 is $400. . . . As between S1 and S2, S1 is a principal obligor to the extent of $600 and a secondary obligor to the extent of $400 . . . . Thus, S1 has a right of contribution against S2 to the extent that S1 has liability to C in excess of $600." Restatement (Third), Suretyship and Guaranty § 55, comment a, p. 237 (1996).

The illustration contained in the Restatement clearly shows the principle that Robert Rossman can collect contribution only from the other guarantors, Guardian, Terracino and DeMarsico,[2] and only to the extent that he paid more for the note, guaranties and deficiency judgment than his share (one third) of the original note. There being no evidence in this case that he paid in

___

[2] Although DeMarsico was one of the guarantors of the note, he is not a party to this appeal.

excess of that amount, I conclude that the defendants had no obligation to contribute and that the plaintiffs had no greater right to enforce the original note as against the defendants.

The trial court found that Consolidated Asset Management, LLC, was formed to protect the assets of Catherine Rossman and Robert Rossman. The shareholders of Consolidated consisted of only Catherine Rossman and the Rossman family attorney, Buzzi.

"A tenant in common who purchases an outstanding incumbrance holds it in trust subject to the election of his cotenants to contribute their equitable share and have the benefit of the purchase under certain conditions. *Scanlon* v. *Parish*, [supra, 85 Conn. 381], and authorities therein cited. [The defendant] . . . claims that when a spouse of a tenant in common is the purchaser the same trust arises. . . . [This rule] is well recognized, *Robinson* v. *Lewis*, 68 Miss. 69, 71, 8 So. 258 [1890]; *Biggins* v. *Dufficy*, 262 Ill. 26, 104 N.E. 180 [1914]; *Abbott* v. *Williams*, 74 W. Va. 652, 82 S.E. 1097 [1914]; note, 54 A.L.R. 879; 2 Tiffany, Real Property (3d Ed.), p. 292. The rule is based upon public policy in view of 'the danger which lurks in allowing a wife to do what a husband could not, on account of his fiduciary relationship to the party affected.' *Seymour* v. *Seymour*, 120 Misc. 525, 527, 199 N.Y.S. 23 [1923]; *Robinson* v. *Lewis*, supra." *Skolnick* v. *Skolnick*, 131 Conn. 561, 564, 41 A.2d 452 (1945).[3]

---

[3] I acknowledge that since its publication over half a century ago, *Skolnick* has not been cited in any reported case. It is, however, a decision of our Supreme Court and, as such, retains the force of precedent unless and until it is overruled by that court or by the legislature. "[T]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide." (Internal quotation marks omitted.) *State* v. *Maia*, 48 Conn. App. 677, 683 n.8, 712 A.2d 956, cert. denied, 245 Conn. 918, 717 A.2d 236 (1998).

I would apply this doctrine of equity not only to the wife, Catherine Rossman, but also to attorney Buzzi, who represented both Rossmans. Buzzi represented Robert Rossman in June, 1997, in his unsuccessful attempt to purchase the note, guarantees and deficiency judgment. In July, Buzzi, as trustee, purchased the note, guarantees and deficiency judgment from JLM Services Corporation. In the same month, Buzzi sold them to Consolidated, whose officers were Buzzi and Catherine Rossman, with the full knowledge and acquiescence of Robert Rossman. Consolidated was formed solely to protect the assets of the Rossmans and stands to profit at the expense of the other sureties.

A foreclosure proceeding is an equitable proceeding. It would be inequitable for two guarantors to be held liable on the note and deficiency judgment while another escapes the obligation due to the actions of his spouse and family lawyer. The doctrine of *Skolnick* is not one of agency but of equity.

I would reverse the trial court's judgment and remand the case with an order to allow the other guarantors the right of contribution on the purchase price that Consolidated paid for the note, guarantees and deficiency judgment.