RANDAL D. MACKIE ET AL. *v.*
RICHARD A. HULL ET AL.
(AC 21615)

Lavery, C. J., and Flynn and Peters, Js.

Argued September 25, 2001—officially released May 7, 2002

*Jonathan J. Meter*, with whom was *James J. Meter*, for the appellants (defendants).

*Gerald L. Garlick*, for the appellees (plaintiffs).

*Opinion*

FLYNN, J. The defendants, Richard A. Hull and Catherine A. Hull, appeal from the judgment of the trial court which settled the northerly boundary of their land and permanently enjoined them from entering on or in any way interfering with the plaintiffs' neighboring land to the north. The defendants challenge the trial court's findings (1) that the plaintiffs, Randal D. Mackie and Joanna Mackie, have as the southerly boundary of their plot of land in Morris the southerly line of an "abandoned highway" and (2) that the defendants have no interest in any portion of the plaintiffs' land, including any portion of the abandoned highway. We uphold the trial court's determination that the plaintiffs' southerly

boundary is the southerly line of the abandoned highway. However, we remand this case for determination of whether the highway was abandoned after June 29, 1959, by the passage of a sufficiently long period of nonuse with intent to abandon, giving the defendants a right of access under General Statutes § 13a-55.

We first summarize the pertinent facts. The land in dispute was once a small part of a larger piece owned by David Gardiner. Gardiner acquired title by a deed that described the southerly boundary as "along *center line* of old discontinued road 1,795 feet, more or less . . . ." (Emphasis added.) The defendants acquired a part of Gardiner's tract by virtue of a conveyance by warranty deed dated April 17, 1984, and recorded on May 1, 1984, in volume 43, page 678, of the land records. This warranty deed conveyed a parcel 730 feet long, more or less, along that abandoned right-of-way to a point in the southeasterly corner of land belonging to Leonard J. Rothman. In a series of conveyances within the family, the defendant Catherine Hull conveyed the parcel of land received from Gardiner to the defendant Richard Hull, who in turn conveyed it to his daughter and son-in-law, Patricia A. Beaudoin and Charles J. Beaudoin, who in turn conveyed to the plaintiffs by warranty deed dated May 23, 1991, and recorded on May 24, 1991, in volume 54, page 826, of the land records. In all of the conveyances after Gardiner, there was language in the deeds describing the southerly boundary line as "the southerly line of [the] abandoned highway . . . ." These deeds also describe the ends of the southerly boundary line as coincident with two corners of neighboring properties. For example, the westerly end of the southerly boundary sits at the southeasterly corner of "land of Rothman."

Although each of the deeds does not appear inconsistent on its face, reference to extrinsic evidence in the record reveals a conflict in the description of the south-

erly boundary. Reference to a survey map of record reveals that the corners of neighboring property and the southerly boundary of the abandoned highway do not describe the same line. Yet both of these calls are used in the deeds to describe the southerly boundary of the plaintiff's property. The southerly boundary of the abandoned highway lies at a point over seventeen feet further south from one corner of the neighboring property. That corner falls on the *midline*, not the southerly boundary, of the abandoned highway.

The trial court found that "[t]he defendants, prior to the conveyance to [the] Beaudoin[s], had title to the entire abandoned highway . . . as set out in the Gardiner deed, the warranty deed from Charles E., Jr., and Martin [sic] K. LeSan, dated August 25, 1977, and recorded August 22, 1977 . . . and the quitclaim deed from Marion K. LeSan to the defendants dated July 7, 1985, and recorded August 14, 1985 . . . ." Together, these parcels encompassed all of the land at issue in this appeal. Thus, even if Gardiner's deed to the defendants did not convey up to the southerly bound of the abandoned highway but only to its midline, the defendants had an interest in the entire abandoned highway, which they could then convey to the plaintiff.

The principles guiding our construction of land conveyance instruments, such as the deeds at issue in this appeal, are well established. "The construction of a deed . . . presents a question of law" which we have plenary power to resolve. (Internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 511, 757 A.2d 1103 (2000). "In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent

expressed . . . it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." (Internal quotation marks omitted.) *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, 239 Conn. 769, 780, 687 A.2d 1270 (1997). "In determining the location of a boundary line expressed in a deed, if the description is clear and unambiguous, it governs and the actual intent of the parties is irrelevant." *Marshall* v. *Soffer*, 58 Conn. App. 737, 743, 756 A.2d 284 (2000). "In the event a latent ambiguity is found, the ambiguous language in the grant is ordinarily construed against the grantor and in favor of the grantee, and the grantee may adopt the boundary most favorable to him." (Internal quotation marks omitted.) Id., 744. "A latent ambiguity arises from extraneous or collateral facts that make the meaning of a deed uncertain although its language is clear and unambiguous on its face." Id., 743.

As a threshold matter, the defendants challenge the trial court's finding that there was no latent ambiguity in the deed description. Although we disagree with the court on this point and determine that there is a latent ambiguity, we nonetheless affirm the court's finding that the plaintiffs have as their southerly boundary the southerly line of the highway. As discussed previously, the deeds do not appear inconsistent on their face, but reference to collateral exhibits reveals a conflict between two calls in the deed description of the southerly boundary of the plaintiffs' property. The deed description uses both the southerly line of the highway and the corners of neighboring property to describe the southerly boundary line of the plaintiffs' property. Reference to a survey map of record reveals a conflict in these calls: the southerly boundary of the abandoned

highway lies at a point over seventeen feet farther south from one corner of the neighboring property.

After a thorough review of the record, we find nothing in the surrounding circumstances to indicate that the parties' mutual intent is better expressed in either one of the two conflicting calls. Thus, we decline to adopt the trial court's position that the issue can be resolved as a question of comparative dignity between the two calls. As the defendants argued, the two calls are of equal dignity in manifesting the intent of the parties because they are equally certain. Cf. *Barri* v. *Schwarz Bros. Co.*, 93 Conn. 501, 510–11, 107 A. 3 (1919) (call "containing the less certainty must yield to that possessing the greater, if apparent conflict between the two cannot [otherwise] be reconciled"). Both the southerly line of the abandoned highway and the corners of the adjoining property are generally classified as monuments. See *Frank Towers Corp.* v. *Laviana*, 140 Conn. 45, 51, 97 A.2d 567 (1953) ("highway has always been regarded as a fixed monument . . . [and] [t]he land of an adjoining proprietor whose boundaries can be fixed by known monuments is also considered to be a monument" [citations omitted]); see also *Veve* v. *Sanchez*, 226 U.S. 234, 240, 33 S. Ct. 36, 57 L. Ed. 201 (1912) ("locative lines of the adjoining owners . . . are certain, or they can be made certain, and . . . are treated as a sort of natural monument"). Thus, the two calls fall in the same general class of certainty. See generally 12 Am. Jur. 2d 422, Boundaries § 7 (1997).

It is true that a default hierarchy has developed, in which various classifications of monuments are deemed generally to be of greater dignity than others. Under the prevailing general hierarchy, *"other things being equal,* resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries (which are considered a sort of monument) and thereafter to courses and distances."

(Emphasis added.) 12 Am. Jur. 2d 466, supra, § 61; see also *Benedict* v. *Gaylord*, 11 Conn. 332, 336 (1836) ("limits of another's land referred to generally, without particularity of description, or known and certain boundaries, are descriptions of great uncertainty" and more specific descriptions of monuments would prevail over them). Thus, with no other information about their relative certainty, the artificial monument of the abandoned highway would prevail over adjacent boundary descriptions. However, the underlying concern addressed by this default hierarchy is the underlying certainty of the specific call in question. More certain calls, whatever their general label, prevail over less specific calls because they better express the mutual intent of the parties. Each of the two calls in the present case can readily be ascertained with equal certainty by consulting a final subdivision map referenced in a boundary line agreement of record in the plaintiffs' chain of title. Thus the search for greater certainty in one of the calls to prevail over the other as an expression of the parties' mutual intent leaves us at an impasse.

In such a case of irreconcilable ambiguity, we are left with the principle that the ambiguity is to be resolved against the grantor. *Marshall* v. *Soffer*, supra, 58 Conn. App. 744. The defendants were the grantors of the land at issue in this appeal, who referred to the southerly line of the highway, rather than the midline, as the southerly boundary of the property. Thus, the deed is construed to the advantage of the grantee plaintiffs. The plaintiffs retain the southern line of the abandoned highway as the southerly boundary of their land and enjoy possession of the entire area of land of the abandoned highway.

The defendants briefed another argument that sought to resolve the latent ambiguity as a case of scrivener's error. When questioned at oral argument, however, the

defendants conceded that the elements necessary to find scrivener's error were absent, stating: "We are not arguing this on the basis of scrivener's error [or] using the rules of law that would be appropriate to a [claim of] scrivener's error." Thus, the defendants abandoned this claim at oral argument. Cf. *State* v. *Ryan*, 182 Conn. 335, 338, 438 A.2d 107 (1980) (cross appeal abandoned at oral argument).

The defendants also challenge the court's finding that they failed to establish that they have a right-of-way over the abandoned highway by operation of § 13a-55. We remand the case to the trial court on this issue, with instruction to determine whether the defendants have established that the highway was abandoned after 1959, creating a right-of-way over the highway in favor of the defendants under § 13a-55.

We first set forth the appropriate standard of review for this issue. "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, 66 Conn. App. 397, 401–402, 784 A.2d 970, cert. granted on other grounds, 258 Conn. 949, 788 A.2d 98 (2001); *Primary Construction Services, LLC* v. *North American Specialty Ins. Co.*, 66 Conn. App. 828, 829–30, 785 A.2d 1218 (2001). "When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its con-

clusions are legally and logically correct and find support in the facts that appear in the record. Practice Book [§ 60-5, formerly § 4061] . . . ." (Citations omitted; internal quotation marks omitted.) *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 511, 767 A.2d 692 (2001).

The trial court concluded, in relevant part, the following: "3. The defendants . . . have no right, title, interest or claim of any kind in and to any portion of the property, including any portion of the . . . highway . . . . 4. The defendants . . . are permanently enjoined from using, entering on, or in any way interfering with the plaintiffs' use and enjoyment of the property. 5. The defendants . . . have failed to demonstrate that they have acquired any interest in any part of the property . . . under General Statutes § 13a-55 . . . ."

The defendants specifically challenge the trial court's finding that "the abandoned highway was extinguished by the direct government action of October, 1923 . . . ."[1] The defendants are aggrieved by the court's finding because it defeated their claim at trial that they held a "right-of-way over the southerly half of the . . . abandoned highway by reason of § 13a-55 of [the] General Statutes," which would permit them a right-of-way over the highway even if they did not own it in fee simple. Section 13a-55 provides in relevant part: "Property owners bounding a discontinued or abandoned highway . . . shall have a right-of-way . . . over such . . . highway." Section 13a-55 was enacted in 1959 and

---

[1] The defendants raised this claim of error at trial, setting forth their argument that the highway had not been discontinued in October, 1923. The defendants argued that the town of Morris had not followed the "strict statutory requirements" for highway discontinuation, stating that "there is no evidence before this court of any writing signed by the selectmen discontinuing the roadway . . . . Accordingly, it must be found that the roadway was not discontinued by the Town of Morris or its selectmen on October 1, 1923."

it does not apply retroactively. *Rudewicz* v. *Gagne*, 22 Conn. App. 285, 287, 582 A.2d 463 (1990). Therefore, if the highway at issue in this appeal was discontinued or abandoned before 1959, the defendants would not have a right-of-way by operation of § 13a-55. The court recognized this principle and found that the defendants did not have a right-of-way under § 13a-55 because the highway was "extinguished by the direct government action of October, 1923," over thirty-five years prior to the effective date of the statute.

Before assessing whether the trial court's finding that the highway was "extinguished by . . . direct government action" in October, 1923, has support in the record, we must first discuss what highway discontinuation is. "A highway may be extinguished [1] by direct action through governmental agencies, in which case it is said to be discontinued; or [2] by nonuser[2] by the public for a long period of time with the intention to abandon, in which case it is said to be abandoned." *Greist* v. *Amrhyn*, 80 Conn. 280, 285, 68 A. 521 (1907).[3] The trial court found that the highway at issue was extinguished by the town of Morris in 1923, invoking the former of these concepts (discontinuation).

"The methods of discontinuing a highway through governmental agencies . . . are prescribed by law and must be strictly pursued." Id. In October, 1923, the relevant highway discontinuation statute, General Statutes (1918 Rev.) § 1442 provided in pertinent part that "[t]he selectmen of any town may, with its approbation, *by a writing signed by them*, discontinue any highway

[2] "Nonuser" is a term of art utilized in early Connecticut case law. See, e.g., *Beardslee* v. *French*, 7 Conn. 125, 128 (1828). In this opinion, we use the term "nonuse" interchangeably with this early term of art.

[3] Our common law does not fix by "bright line" the number of years of nonuse with the intent to abandon necessary to find that nonstatutory "abandonment" of the public right to travel over a highway has taken place. See *Newkirk* v. *Sherwood*, 89 Conn. 598, 604–605, 94 A. 982 (1915).

. . . ." (Emphasis added.) The plain language of this statute indicates that the selectmen were required to produce a signed writing describing their vote to effectively discontinue the highway. Accord R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 49.3 (b), p. 482. "The statute requires a written discontinuance of the highway by the board of selectmen . . . . There must be both a writing signed by the selectmen discontinuing the highway and approval of the town . . . . [This action is] required to be formal and definite so it is clear that parties aggrieved . . . can take an appeal . . . ." (Citation omitted.) Id.

The record on appeal does not support the court's conclusion that the highway was discontinued by direct government action in October, 1923. The court had evidence before it that at a meeting on October 1, 1923, the town of Morris voted to close the highway. But there was no evidence indicating that the selectmen produced a signed writing to discontinue the road. We have reviewed the notice of the town meeting, warned for Monday, October 1, 1923, "to legalize by vote the closing of an abandoned highway commencing at a point near the S'over [sic] place on the Morris-Bantam Highway . . . ." We observe that the notice does not indicate that the voters were convened to consider or act upon any recommendation of the selectmen as to this action, nor does the record contain any other evidence of such a written recommendation. The minutes of the town meeting indicate that the townspeople voted to "close" the highway. We cannot presume, from evidence of town approbation alone, that the selectmen produced the necessary signed writing. Such an evidentiary presumption would effectively collapse two statutory elements into one, rendering the writing requirement meaningless. "The methods of discontinuing a highway through governmental agencies are pre-

scribed by law and must be strictly followed." *Marrin* v. *Spearow*, 35 Conn. App. 398, 404, 646 A.2d 254 (1994).

In the absence of evidence that the proper methods were followed, the court's finding that the highway was discontinued by direct government action in October, 1923, cannot stand. This alone, however, does not vindicate the defendants' claim under § 13a-55 to a right-of-way over the highway as an adjoining landowner to an abandoned road. As previously discussed, the defendants would need to have established that the highway was abandoned, i.e., that a sufficiently "long time" of nonuse had accrued with the intent to abandon the highway by some date after the effective date of § 13a-55 (in 1959). At trial, the defendants conceded that there was no evidence that the highway had been discontinued by government action after 1959. They argued exclusively under the theory that the highway was abandoned after 1959 by nonuse over a sufficiently long period of time with the intent to abandon. The court never reached this argument because its finding that the highway had been discontinued in 1923 foreclosed the need.[4] Having determined that this discontinuance finding was improper, we now remand this case for the trial court to make the additional findings of fact required to determine whether the highway was abandoned after 1959. See generally *Pizzuto* v. *Newington*,

[4] Although the judgment file states that the defendants "have failed to demonstrate that they have acquired any interest in any part of the property . . . under General Statutes § 13a-55," we nonetheless remand on this issue because it is clear from the memorandum of decision that the court did not consider whether the highway was abandoned by nonuse, which might have accrued after the effective date of the statute. The memorandum of decision specifically stated that "[b]ecause the court finds that the abandoned highway was extinguished by the direct government action of October, 1923, the issue of nonuse need not be addressed." Because we have determined that the court's conclusion regarding direct government action was improper, the trial court must now address the factual issue of abandonment on remand.

174 Conn. 282, 285, 386 A.2d 238 (1978) (whether highway has been abandoned is question of fact).

Accordingly, we agree with the trial court's determination that the southerly boundary of the plaintiff's land is the southerly boundary of the highway. We disagree, however, with that court's determinations that one, the "defendants . . . have no right, title, interest or claim of any kind in and to any portion of the property, including any portion of the abandoned highway . . . [2.] [that t]he defendants . . . are permanently enjoined from using, entering on, or in any way interfering with the plaintiffs' use and enjoyment of the property [and 3. that] the defendants . . . have failed to demonstrate that they have acquired any interest in any part of the property . . . under General Statutes § 13a-55 . . . ." We remand this case to the trial court for consideration of whether the highway was abandoned, i.e., whether a sufficiently long period of nonuse with intent to abandon the highway had accrued, by some date after the June 29, 1959 effective date of § 13a-55, creating a right-of-way for any of the defendants, or alternatively, whether abandonment by passage of such a sufficiently long period of time had occurred prior to the June 29, 1959 effective date of § 13a-55, in which case, since the statute is prospective only in its application, no right-of-way could be created.

The judgment is reversed only as to the determination that the defendants do not have a right-of-way over the subject property and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.