CHESTER LISIEWSKI *v.* JOHN A. SEIDEL ET AL.
(AC 21385)

Mihalakos, Flynn and Stoughton, Js.

Argued December 11, 2001—officially released October 15, 2002

*Ernest J. Cotnoir*, for the appellants (defendants).

*Beth A. Steele,* for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendants, John A. Seidel and Fred R. Seidel, Jr., appeal from the judgment of the trial court, which resolved this boundary dispute involving property located in the town of Sprague in favor of the plaintiff and also found that the plaintiff held a prescriptive easement over the defendants' gravel driveway. We affirm in part and reverse in part the judgment of the trial court.

The plaintiff, Chester Lisiewski, owns land to the east of the disputed property and brought this action when the defendants erected a metal gate obstructing his passage over the driveway. On appeal, the defendants claim that the trial court improperly found a latent ambiguity in the deed description of the property and improperly resolved that ambiguity against them. The defendants also challenge the trial court's determination that the plaintiff holds a prescriptive easement over the driveway, claiming that the plaintiff did not set forth sufficient evidence to establish that his use was not permissive. We agree with the defendants' first claim. Accordingly, we reverse that part of the judgment determining the location of the shared boundary between the parties. We affirm that part of the judgment finding that the plaintiff held a prescriptive easement over the gravel driveway.

The parcel of land subject to the title dispute is a narrow, L-shaped parcel on the northerly and westerly borders of the plaintiff's land (disputed area). There is also a dispute over an easement to use the existing gravel driveway. Even if one accepts the construction of deeds advanced by the plaintiff, almost all of the gravel driveway is located on the undisputed land of the defendants except for a narrow gore within the

disputed area which expands from a sliver to a width of five feet on the street line.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. In the early 1950s, the plaintiff and the defendants' grandfather, Reinhold Seidel, worked together as foremen in the same factory. At that time, the plaintiff and Seidel negotiated the land conveyance at issue in this appeal. Seidel owned real property in the town of Sprague, which he decided to sell to the plaintiff. In 1952, prior to conveyance, the plaintiff began building a house on the land. During construction, vehicles eventually wore a path near the western boundary of the parcel that Reinhold Seidel would eventually convey to the plaintiff. It was this path that would later evolve into the gravel driveway at issue in this appeal. On April 28, 1954, Seidel conveyed the land to the plaintiff's wife by warranty deed, which was recorded in the Sprague land records in volume 16, pages 410 and 411.

When the plaintiff moved in, the land immediately to the east of the gravel driveway was "practically" a "jungle," due to heavy foliage. The plaintiff soon cleared and cultivated the area. In late 1954, he planted a row of Hemlocks in that area, roughly parallel to the gravel driveway. In the late 1950s, he built a stone wall in the disputed area. One length of that stone wall lay several feet to the east of the gravel driveway.

Meanwhile, Seidel retained land to the west, including the gravel driveway. This land eventually passed to the defendants. Upon Seidel's death, the land first passed from his estate to Martha Emma Seidel, his wife. In 1962, Martha Emma Seidel conveyed that land by quitclaim deed dated February 16, 1962, and recorded in the Sprague land records in volume 15, page 413, to her son, Fred Seidel, and his wife Olga. Finally, Fred Seidel and Olga Seidel conveyed the land to their two

sons, John Seidel and Fred R. Seidel, Jr., (the defendants) by warranty deed dated and recorded on June 20, 1997, on pages 689 and 690 of volume 53 of the Sprague land records.

Before the defendants acquired the property to the west of what their grandfather had conveyed to the plaintiff, the plaintiff had used the gravel driveway for more than forty years as a means of egress and ingress to and from his property. In 1981, the plaintiff built a garage behind and to the north of his house, connecting with the gravel driveway. Prior to that date, he had simply parked vehicles outside in the same location. The defendants' predecessors in title, namely their father and grandfather, never challenged the plaintiff's use of the gravel driveway.

Shortly after acquiring the land to the west of the plaintiff's land from their parents, however, the defendants erected a metal gate near the end of the gravel driveway, preventing the plaintiff's passage. The defendants hired a surveyor, Thomas Brennan, who set pins in the ground indicating that their boundary lay near the stone wall built by the plaintiff, to the east of the driveway. In the view of this expert, the defendants held title to most of the gravel driveway and the strip of land between the eastern edge of the driveway and the plaintiff's stone wall.

The plaintiff hired his own surveyor, John Faulise. In the plaintiff's view, most of the gravel driveway remains the property of defendants, but the disputed area to the east of the driveway is his. The court adopted the plaintiff's view as to the ownership of the disputed area and also found that the plaintiff held a prescriptive easement over the gravel driveway.[1] It held in pertinent

---

[1] In its first memorandum of decision, the court initially determined that the question of an easement by prescription was moot after adopting the plaintiff's view of the boundary dispute. This was incorrect, since the plaintiff's boundary theory encompassed only the land to the east of the driveway, not the driveway as well. After all of the parties moved for articulation or

part: "After a motion for articulation/reargument, the court entered judgment for the plaintiff on the second count of the amended revised complaint. The court finds the allegations in the second and third counts of the amended revised complaint to be true.[2] The court, having heard the interested parties, finds that the plaintiff has established through the testimony of his expert and through his deed that he has, in fact, title to the disputed land as set forth on exhibit A, and that the defendants have no title, interest or estate therein. The court further finds that the defendants failed to establish their claim of adverse possession as to the disputed area by clear and convincing evidence. Accordingly, the court finds that the plaintiff has clear title to the disputed area as set forth on exhibit A and enters judgment accordingly. The court further finds that the plaintiff has a prescriptive easement over the gravel driveway as shown on a map entitled 'Property Survey prepared for Chester Lisiewski, 108 Bushnell Hollow Road, Sprague, Connecticut, Scale 1"= 20', May, 1998' by John U. Faulise, Jr., Boundaries, LLC, and enters judgment accordingly."

The exhibit A the court referenced in its judgment was *not* the exhibit A of the revised amended complaint, but contained the same legal description found on exhibit C of the revised amended complaint. The courses and distances set forth in both exhibit A of the court's judgment and exhibit C of the revised amended complaint describe only a northerly and westerly line of the disputed area. We mean that the legal description does not close by describing all sides of this L-shaped parcel.

reconsideration, the court rendered judgment finding that the plaintiff held a prescriptive easement over the driveway.

[2] Although this sentence does not contain the language indicating that "it is adjudged," or that the court "[renders] judgment accordingly," we treat this as a part of the judgment file required for this appeal.

However, because the courses and description are followed by the words, "Said disputed area contains .15 acres more or less and is shown as 'Disputed Area' on a survey plan prepared by John U. Faulise, Jr., L.S., Boundaries entitled: Property Survey prepared for Chester Lisiewski, 108 Bushnell Hollow Road, Sprague, Connecticut, scale 1"= 20', May 1998, Ident No. 98-065, Last Revised 1/14/00," we conclude that the court's description is clear as to the description of the disputed area despite the fact that the courses set forth do not contain a description of all sides of the parcel.

After the judgment was rendered, the defendants filed this appeal. Further facts and procedural history will be set forth where necessary.

The defendants first claim that the court improperly determined that the relevant deed description contained a latent ambiguity. We agree. Accordingly, we reverse that aspect of the trial court's judgment.

"The principles guiding our construction of land conveyance instruments, such as the [deed] at issue in this appeal, are well established. The construction of a deed . . . presents a question of law which we have plenary power to resolve. . . . *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 511, 757 A.2d 1103 (2000)." (Internal quotation marks omitted.) *Mackie* v. *Hull*, 69 Conn. App. 538, 541, 795 A.2d 1280, cert. denied, 261 Conn. 916, 917, 812 A.2d 865 (2002). "In determining the location of a boundary line expressed in a deed, if the description is clear and unambiguous, it governs and the actual intent of the parties is irrelevant." (Internal quotation marks omitted.) Id., 542.

The trial court found that there was a latent ambiguity in the deed description of the plaintiff's property used in the conveyance from the defendants' predecessor in title, Reinhold Seidel, to the plaintiff. "A latent ambiguity arises from extraneous or collateral facts that make

the meaning of a deed uncertain although its language is clear and unambiguous on its face. *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 782, 653 A.2d 122 (1995)." *Marshall* v. *Soffer*, 58 Conn. App. 737, 743, 756 A.2d 284 (2000). This warranty deed was dated April 28, 1954, and recorded in volume 16 on pages 410 and 411 of the Sprague land records, and described the property conveyed as follows: "Beginning at a point on the northerly side of [Bushnell Hollow Road] at the southeasterly corner of these conveyed premises and the southwesterly corner of land of Esdras Gosselin and running thence northerly along a wire fence 415 feet bounded easterly by said Gosselin land; thence westerly 200 feet to a bound; thence southerly on a line parallel with and *200 feet distant westerly* from the first described line 415 feet to the northerly side of said [road], the last two lines bounded northerly and westerly by remaining land of the grantor; thence easterly along the northerly side of said [road] 200 feet to the point of beginning." (Emphasis added.) The beginning point of the first course, a point on the northerly side of Bushnell Hollow Road, is not in dispute and can be readily ascertained because the location of the monument road and the southeasterly corner of the plaintiff's property, where it meets the southwesterly corner of Gosselin's residence on that road line, are readily ascertainable. The course and the distance as to the first boundary can be readily ascertained as well. The wire fence monument was located in the field, and ran generally in the northerly direction, as called for in the deed. Although the direction of the fence was also somewhat easterly as well, the monumental call of the fence would govern as more certain. "It is well settled as a rule of the construction of deeds that '[w]here the boundaries of land are described by known and fixed monuments which are definite and certain, the monuments will prevail over courses and distances.' " *Frank*

*Towers Corp.* v. *Laviana,* 140 Conn. 45, 50, 97 A.2d 567 (1953); *Velsmid* v. *Nelson,* 175 Conn. 221, 227, 397 A.2d 113 (1978); *Russo* v. *Corideo,* 102 Conn. 663, 672, 129 A. 849 (1925)." *Koennicke* v. *Maiorano,* 43 Conn. App. 1, 10, 682 A.2d 1046 (1996). Because the deed calls for 415 feet, the northeasterly corner can be readily ascertained. With respect to the fourth course and distance, the deed states that it runs "easterly along the northerly side of said highway 200 feet to the point of beginning." By running 200 feet back westerly from the point of beginning, we can ascertain the southwesterly corner. It is important to keep in mind that the undisputed title evidence and the language of the description the grantor used show that the grantor was making an out conveyance from a larger parcel that he owned, and that he deeded off only 200 front feet on Bushnell Hollow Road.

The point of beginning, the easterly boundary and the terminus of the easterly boundary were readily ascertained by both surveyors, Faulise and Brennan. Their locations are undisputed. It is also undisputed that the property described is not a rectangle. The property described contains no right angles, as dictated by the oblique angle formed where Bushnell Hollow Road meets the easterly boundary of the plaintiff along the wire fence abutting land of Gosselin (now land of Gerald Czikowski and Linda Czikowski). The lengths of the boundaries can be followed exactly, yielding a parcel generally looking like a parallelogram, with easterly and westerly boundaries of 415 feet in length each and northerly and southerly boundaries of 200 feet in length each. The four corners of the property can then be located.

However, Faulise, the plaintiff's surveyor, whose view the trial court adopted, contended that the distance between the parallel easterly and westerly boundaries, described as 200 feet in the deed, could not be the

same length as the northerly and southerly boundaries, which were also described as 200 feet in length in the deed. The easterly boundary is at an oblique angle from the southerly and northerly boundaries, and the plot is therefore not a rectangle. Faulise testified that the distance between the parallel easterly and westerly boundaries, taken from a direction perpendicular to them, cannot match the 200 foot deeded lengths of the northerly and southerly boundaries. Although the court never used the word "perpendicular," Faulise's survey map depicts a distance of 200 feet taken from the direction perpendicular to segments of the easterly and westerly boundaries. Yet the deed describes the distance between the parallel easterly and westerly boundaries as matching the northerly and southerly boundaries, i.e., 200 feet. The plaintiff's surveyor argued that a latent ambiguity must therefore be resolved. We conclude that the language of the deed is clear and unambiguous on its face and that no extraneous or collateral facts exist that make its meaning uncertain. See *Marshall* v. *Soffer*, supra, 58 Conn. App. 743.

There is an inaccurate assumption in the plaintiff's view of the deed description. The assumption is that the distance between the parallel easterly and westerly boundaries, which distance was also stated as 200 feet in the deed, must be measured from a direction *perpendicular to those boundaries*. The defendants argued, and we agree, that this is not so. The plaintiff's view would require us to excise the adjective "westerly" from the call "on a line parallel with and 200 feet distant westerly from the first described line" and simply consider it to be a measure of perpendicular distance between the parallel lines. However, "[e]very word, sentence and provision, if possible, is to have effect, and a construction which requires rejection of an entire clause is not to be admitted . . . ." (Internal quotation marks omitted.) *Mulla* v. *Maguire*, 65 Conn. App. 525,

532, 783 A.2d 93, cert. denied, 258 Conn. 934, 785 A.2d 29 (2001). We read the call "200 feet distant westerly" plainly to mean that in the westerly direction, the parallel line is 200 feet distant; not, as the trial court found, to mean that the lines must be 200 feet away in a direction perpendicular to the original line described as running 415 feet along Gosselin's land. Unlike the directional call for the easterly boundary along the wire fence, there was no competing call, much less a monument, that would supersede the directional call for the distance between the parallel easterly and westerly boundaries, namely, the "westerly" direction. Under our plain reading of the deed description, there is no latent ambiguity, and the remaining calls in the deed description do not conflict. The defendant's expert, Brennan, followed this approach, and the lot lines of his survey map matched the calls in the deed description within inches. In the plaintiff's view, the northerly and southerly boundaries had greater lengths than their respective calls in the deed.[3] Without these greater lengths, a smaller area results and the westerly boundary does not encompass the disputed area between the gravel driveway and the stone wall. Accordingly, because all calls can be given effect as written, we conclude that the plaintiff does not hold title in the disputed area. See id.

We note that the trial court found that "as between the two experts, Mr. Faulise was by far the most credible and expert." Our appellate review generally defers to the determinations of the trial court regarding factual findings on issues of credibility, unless they are clearly erroneous. *Mackie* v. *Hull*, supra, 69 Conn. App. 545.

[3] The plaintiff's survey map indicates a northerly boundary of 213.56 feet in length and a southerly boundary of 205.39 feet in length. In contrast, the deed description called for those boundaries to measure 200 feet in length. The plaintiff's survey rendered lengths inconsistent with the deed description as to three of the four boundaries.

However, the ultimate issue of who holds title to the disputed area is not a question of credibility. "The construction of a deed . . . presents a question of law which we have plenary power to resolve. . . . *Il Giardino, LLC* v. *Belle Haven Land Co.*, [supra, 254 Conn. 511]." (Internal quotation marks omitted.) *Mackie* v. *Hull*, supra, 541. An expert witness testifies to "*assist* the trier of fact in understanding the evidence or in determining a fact in issue." (Emphasis added.) Conn. Code Evid. § 7-2. Because the unambiguous deed description presented no question of fact, the only proper role of the expert witness was to assist the court in understanding the evidence. The court's determination as to Faulise's credibility does not limit the plenary scope of our inquiry into the legal questions posed in the proper construction of the deeds.

We therefore reverse the judgment of the court with respect to its holding that the "plaintiff has established through the testimony of his expert and through his deed that he has, in fact, title to the disputed land as set forth on exhibit A [of the judgment] and that the defendants have no title, interest or estate therein."

The court did not decide the plaintiff's claim that he had established title by adverse possession to the disputed area because it found that he had title by deed,[4] a decision we this day reverse. We therefore remand the case for the court's consideration of whether the plaintiff has established title by adverse possession to any area within the disputed area.[5]

---

[1] Memorandum of decision, 3.

[5] Count one of the plaintiff's amended revised complaint asks for a judgment establishing title in the plaintiff by adverse possession over all that land described in "exhibit c" attached to the complaint, dated June 12, 2000. When one looks at the record filed April 25, 2001, provided to us, no exhibit is attached to the complaint. Nonetheless, an examination of the trial court file reveals that exhibit c was in fact attached to the amended revised complaint. It describes all that land easterly and northerly of a line described on a certain map entitled "Property Survey prepared for Chester Lisiewski, 108 Bushnell Hollow Road, Sprague, Connecticut, scale 1" = 20', May 1998,

Next, the defendants claim that the court improperly determined that the plaintiff held a prescriptive easement over the gravel driveway. Specifically, the defendants argue that the plaintiff failed to meet his burden to prove that he had used the gravel driveway without permission.[6] We affirm this part of the judgment.

The defendants argue that evidence in the record weighs in favor of finding that the plaintiff had either express or implied permission to use the gravel driveway and, thus, that the use was not adverse. Although the defendants' argument has its appeal, it presents factual considerations that fail to establish that the trial court's judgment was clearly erroneous.

---

Ident No. 98-065, Last revised 1/14/00" prepared by John U. Faulise, Jr., licensed land surveyor. We note that the reference to the northerly compass direction appears to be an error and that apparently reference to southerly was intended and that the plaintiff apparently sought a judgment of title by adverse possession not just to the disputed area but also to the portion of the premises to which we have determined that the plaintiff obtained title by deed from his wife, who obtained title by deed from Reinhold Seidel, recorded in volume 16, pages 410 and 411 of the Sprague land records. That description reads as follows: "Beginning at a point on the northerly side of [Bushnell Hollow Road] at the southeasterly corner of these conveyed premises and the southwesterly corner of land of Esdras Gosselin and running thence northerly along a wire fence 415 feet bounded easterly by said Gosselin land; thence westerly 200 feet to a bound; thence southerly on a line parallel with and 200 feet distant westerly from the first described line 415 feet to the northerly side of said [road], the last two lines bounded northerly and westerly by remaining land of the grantor; thence easterly along the northerly side of said [road] 200 feet to the point of beginning; being a portion of the premises conveyed to Reinhold Seidel by deed dated January 8, 1934 and recorded in the Sprague land records, Vol. 11, Page 356."

We remand to the trial court for its determination as to this claim only as to the disputed area as shown on the above referenced Faulise map.

[6] The defendant's conclude at one point in their brief that the "underlying facts do not support a finding, by clear and positive proof, that the plaintiff's use of the right of way was adverse." The only argument the defendant's advance, however, concerns evidence that could support an inferential finding that the plaintiff obtained permission to use the gravel road from persons holding title to it. Therefore, we restrict our analysis to that aspect of the evidence.

The defendants correctly observe that if the plaintiff's use of the gravel driveway were permitted, it could not give rise to an easement by prescription. "To establish an easement by prescription it is absolutely essential that the use be adverse. . . . In order to prove such adverse use, the party claiming to have acquired an easement by prescription must demonstrate that the use of the property has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. *Andrzejczyk* v. *Advo System, Inc.*, 146 Conn. 428, 431, 151 A.2d 881 (1959); *Klar Crest Realty, Inc.* v. *Rajon Realty Corporation*, [190 Conn. 163, 168, 459 A.2d 1021 (1983)]; *Putnam, Coffin & Burr, Inc.* v. *Halpern*, 154 Conn. 507, 515, 227 A.2d 83 (1967). There can be no claim of right unless the use is unaccompanied by any recognition of [the] right [of the owner of the servient tenement] to stop such use. [Thus, a] use by express or implied permission or license cannot ripen into an easement by prescription. *Sachs* v. *Toquet*, 121 Conn. 60, 66, 183 A. 22 (1936) . . . . Connecticut law refrains from extinguishing or impairing property rights by prescription unless the party claiming to have acquired an easement by prescription has met each of these stringent conditions." (Citation omitted; internal quotation marks omitted.) *Westchester* v. *Greenwich*, 227 Conn. 495, 501, 629 A.2d 1084 (1993).

It was not, as the defendants suggest, the plaintiff's burden to establish that his use of the property was without permission. Such a rule would often charge a party with proving a negative. Rather, it was the plaintiff's burden to establish that his use of the property was under a claim of right. *Reynolds* v. *Soffer*, 190 Conn. 184, 188, 459 A.2d 1027 (1983). This is not to say, however, that evidence indicating a lack of permission is irrelevant to whether the plaintiff has established use under a claim of right.

The defendants observe that their predecessor in title (their grandfather) and the plaintiff "were coworkers and acquaintances, and for this reason, the defendants' grandfather actually allowed [the] plaintiff to build his house before title officially passed." The defendants also note that the plaintiff indicated at one point in his testimony that he had permission to build a house on the land before obtaining title. From this, the defendants argue that it is very likely that their father permitted the plaintiff to use the gravel driveway to access his property. Although we appreciate the relevance of this factual background, it does not leave us with the firm impression that the trial court's judgment is clearly erroneous.

"Whether a right-of-way by prescription has been acquired presents primarily a question of fact for the trier after the nature and character of the use and the surrounding circumstances have been considered. *Klein* v. *DeRosa*, 137 Conn. 586, 589, 79 A.2d 773 (1951). When the factual basis of the court's decision is challenged, the reviewing court must determine whether the facts are supported by the evidence or whether they are clearly erroneous. *McNeil* v. *Riccio*, 45 Conn. App. 466, 472, 696 A.2d 1050 (1997). . . . *Faught* v. *Edgewood Corners, Inc.*, 63 Conn. App. 164, 168, 772 A.2d 1142, cert. denied, 256 Conn. 934, 776 A.2d 1150 (2001)." (Internal quotation marks omitted.) *Hoffer* v. *Swan Lake Association, Inc.*, 66 Conn. App. 858, 859–60, 786 A.2d 436 (2001).

Although the circumstances of the case are such that implied permission could be rationally found, the failure to so find is not clearly erroneous. The plaintiff, his son and his son's former wife each testified that permission was never granted. The court was entitled to accord greater weight to that testimony, to find that the use was adverse and to grant the plaintiff an easement over the driveway area by prescription.

The judgment is reversed as to the determination that "the plaintiff has established through the testimony of his expert and through his deed that he has, in fact, title to the disputed land as set forth on exhibit A [of the judgment], and that the defendants have no title, interest or estate therein" and the case is remanded for further proceedings to determine whether the plaintiff has established his claim of title by adverse possession of that property. That part of the judgment determining that the plaintiff has a prescriptive easement over the gravel driveway is affirmed.

In this opinion the other judges concurred.