# WLADYSLAW LACIC ET AL. *v.* JOSE F. TOMAS ET AL.
## (AC 22907)

Lavery, C. J., and Dranginis and Peters, Js.

Argued May 1—officially released July 29, 2003

*Jacek I. Smigelski*, for the appellants (plaintiffs).

*Kevin L. Mason*, for the appellees (defendants).

*Opinion*

LAVERY, C. J. The plaintiffs, Wladyslaw Lacic and Kazimiera Lacic, appeal from the judgment of the trial court quieting title in the defendants, Jose F. Tomas and Ema Tomas, to a certain strip of land that runs between the parties' properties. On appeal, the plaintiffs claim that the court improperly (1) found that the northern boundary of the plaintiffs' property is located where it is depicted on a survey prepared by James E. Sheehy rather than running along a wooden fence that at one time existed near the southern boundary of the defendants' property, (2) failed to find that a gap existed between the parties' properties, (3) failed to find a latent ambiguity in the deed descriptions of the parties' properties and (4) failed to find that the plaintiffs had acquired title to the disputed strip of land by adverse possession. We affirm the judgment of the trial court.

The record discloses the following facts and procedural history. The parties own adjoining parcels of land in Newington. The defendants acquired title to their property known as 72 Summit Street in 1977. The plaintiffs acquired title to their property known as 84 Summit Street in 1994. The plaintiffs' property is directly south of the defendants' property. From 1977 to November, 2000, the defendants maintained a wooden fence near the southern boundary of their property.

On January 24, 2002, the plaintiffs filed a four count amended complaint against the defendants. In the first count, the plaintiff sought to quiet title to the disputed strip of land pursuant to General Statutes § 47-31. In the second count, they alleged that they gained title to

the subject land through adverse possession. In the third and fourth counts, they alleged trespass to land and negligent infliction of emotional distress, respectively. The defendants filed an answer and a counterclaim alleging vexatious litigation. After a trial to the court, judgment was rendered in favor of the defendants on the plaintiffs' complaint, quieting title to the disputed strip of land in the defendants. The court also rendered judgment in favor of the plaintiffs on the defendants' counterclaim.[1] This appeal followed. Additional facts will be provided as necessary.

## I

The plaintiffs first claim that the court improperly found that the northern boundary of their property is located where it is depicted on a survey prepared by the defendants' expert surveyor, Sheehy, rather than running along a wooden fence that at one time existed near the southern boundary of the defendants' property. The plaintiffs advance three principal arguments in support of their claim: (1) the court improperly relied on the Sheehy survey, (2) the wooden fence is a monument that establishes the proper boundary line, and (3) the defendants and their predecessors in title acquiesced in the boundary as established by the wooden fence. We are not persuaded by the plaintiffs' arguments.

## A

The plaintiffs first argue that the court improperly relied on the Sheehy survey because it was unreliable. Although the plaintiffs provide a plethora of reasons why, in their view, the Sheehy survey was unreliable, in essence, the plaintiffs' argument appears to be that the court should have credited other, "more reliable"

---

[1] The defendants have not challenged that portion of the judgment rendered in favor of the plaintiffs on the counterclaim.

evidence, including a survey prepared by their expert surveyor, Carl H. Jaeger, rather than the Sheehy survey.

In its memorandum of decision, the court stated: "The most persuasive evidence of the actual property line came from surveyors. The plaintiffs presented one surveyor and the defendants presented two, each of whom supported his party's respective position. . . .

"[T]he court credits the testimony of the surveyors called by the defendants. The defendants' surveys are far more detailed, they corroborate each other, though they were done independently, and they rely on monuments in the ground, which are more permanent than the iron pins relied on by the plaintiffs' surveyor. . . .

"While all three surveys purport to be in compliance with § 20-300b-1 et seq. of the Regulations of Connecticut State Agencies, which establish minimum standards of accuracy, content and certification for surveys and maps, the plaintiffs' surveyor testified that he was not familiar with these standards. His survey purports to be a 'location improvement survey' which, according to the regulations, falls under the category of a 'limited property/boundary survey,' the purpose of which is to determine compliance with 'applicable municipal or statutory requirements. . . .' Regs., Conn. State Agencies § 20-300b-2 (c) (3). In contrast, the defendants' surveyors performed 'property/boundary' surveys of the 'resurvey' category, which are appropriate for determining, among other things, 'unresolved conflicts with record deed descriptions and maps . . . .' Id., § 20-300b-2 (b) (1) (G). The defendants' surveys are thus more suited for addressing the question before the court."

In its articulation, the court further stated: "The court fully explained the basis for crediting the defendants' surveyors on pages three to five of its memorandum of decision. The court adds that its decision goes well

beyond what is necessary, as the court can credit or discredit witnesses based solely on intangible factors such as how they appear or sound on the witness stand. In this case, these intangible factors also weighed in favor of the defendants' surveyors, but the court chose to set forth the more objective reasons for crediting the defendants' surveyors at some length in its written decision."

"The determination of a witness' credibility is the special function of the trial court. This court cannot sift and weigh evidence. . . . Otherwise, [t]his court would then, by way of fact-finding, be required to adjudicate the validity and the reliability of that evidence. At this stage of the proceedings, we are incapable of making those necessary determinations. In general, [i]t is the function of the trial court, not this court, to find facts. . . . Imposing a fact-finding function on this court, therefore, would be contrary to generally established law. Indeed, it would be inconsistent with the entire process of trial fact-finding for an appellate court to do so. . . . Thus, viewed through this prism, the testimony was for the trial court to assess and we have no appropriate role at this level in determining which of the various witnesses to credit. (Citations omitted; internal quotation marks omitted.) *State* v. *Nowell*, 262 Conn. 686, 695–96, 817 A.2d 76 (2003). Accordingly, we reject the plaintiffs' argument.

## B

The plaintiffs also argue that the wooden fence is a monument that establishes the proper northern boundary line of their property. The plaintiffs are essentially challenging the court's factual findings.

"Our review of the factual findings of the trial court is limited to a determination of whether they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it

. . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings." (Internal quotation marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 328, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002).

In its memorandum of decision, the court succinctly stated the issue with respect to the wooden fence as follows: "The first issue is whether the actual property line runs along the line of the former fence, as claimed by the plaintiffs, or whether it runs several feet south of the fence, as claimed by the defendants." In resolving that issue in favor of the defendants, the court stated: "Even if the court credited the plaintiffs' surveyor . . . such testimony would only establish that the fence was the defendants' southern property line; it would not establish that the plaintiffs' northern property line was the fence. . . .

"In any event, the court credits the testimony of the surveyors called by the defendants. . . . In fact, there was a concrete monument at what the defendants' surveyors found was the northwest corner of the plaintiffs' property. . . .

"Corroboration of the defendants' surveys is found in the fact that the northern border of the plaintiffs' property and the property of their neighbors immediately to their east is the same east-west line, according to a 1978 subdivision map. Yet the apparent northern border of the neighbors' property is a chain-link fence that is several feet south of the location of the wooden fence that the plaintiffs claim as their northern border. If the chain-link fence is in fact the northern border of the neighbors' property, as it appears from the photo-

graphs, then the wooden fence, by virtue of the fact that it does not line up with the chain-link fence, could not have been the northern border of the plaintiffs' property. For all these reasons, the court finds that the actual northern border of the plaintiffs' property runs several feet south of the location of the wooden fence."

In its articulation, the court further stated: "In sum, no surveyor affirmatively established the plaintiffs' northern property line as running along the line of the wooden fence. In contrast, the defendants' surveyors, whom the court credited, did affirmatively establish the plaintiffs' northern property line as several feet south of the wooden fence . . . and the defendants' southern property border as essentially the same line. . . . Thus, the plaintiffs did not establish their case by the strength of their own title. See *Marquis* v. *Drost*, 155 Conn. 327, 334, 231 A.2d 527 (1967)." (Citations omitted.)

The plaintiffs cite no case law, and we are aware of none, supporting the proposition that the mere existence of a fence establishes it as a monument marking the actual boundary line of a property.[2] Accordingly, after reviewing the entire record, we conclude that the court's determination that the wooden fence did not establish the northern border of the plaintiffs' property is not clearly erroneous.

## C

The plaintiffs also argue that the defendants and their predecessors in title acquiesced in the boundary as established by the wooden fence.

"Acquiescence in the use and development of an area by a landowner is defined as a consent to the boundary

[2] We also note that the evidence presented at trial indicated that the fence did not run along the entire length of the property line at issue. Moreover, the defendants' expert surveyor, Sheehy, testified that fences commonly are set inside of boundary lines.

as claimed by an adjoining owner and can estop the acquiescing landowner from pursuing a claim of ownership. See *DelBuono* v. *Brown Boat Works, Inc.*, 45 Conn. App. 524, 533, 696 A.2d 1271, cert. denied, 243 Conn. 906, 701 A.2d 328 (1997). The acquiescence must occur under circumstances that indicate an assent to such a use." *Marshall* v. *Soffer*, 58 Conn. App. 737, 744–45, 756 A.2d 284 (2000).

Here, the plaintiffs presented no evidence that the defendants had consented to a boundary as established by the wooden fence. On the contrary, the defendant Jose Tomas testified that he was aware from the time he purchased his property that he owned land south of the fence, and that the plaintiffs and their predecessors in title also knew that this strip of land belonged to the defendants. The mere fact that the fence existed for more than twenty-three years does not establish that the parties had agreed that the fence was the actual boundary between their properties, as the plaintiffs contend. We conclude that the record does not establish that the defendants and their predecessors in title acquiesced in the boundary as established by the wooden fence.

## II

The plaintiffs next claim that the court improperly failed to find that a gap existed between the parties' properties. We are not persuaded.

Again, the plaintiffs are challenging the court's factual findings. "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses."

(Internal quotation marks omitted.) *Greco* v. *Greco*, 70 Conn. App. 735, 737, 799 A.2d 331 (2002).

In its memorandum of decision, the court stated that "the plaintiffs' surveyor believed that there was a gap of approximately two to three feet between the [parties'] respective boundaries" and that "a 1900 neighborhood map" showed "a strip of land 439 feet by one foot in the disputed location that may [have been] the source of the current controversy." The court, however, did not credit that evidence.[3] Instead, as previously discussed, the court, in concluding that the plaintiffs' northern property line and the defendants' southern property line were "essentially the same line," credited other evidence that did not show a gap between the subject properties, including, inter alia, the Sheehy survey, the 1978 subdivision map, the parties' deeds[4] and certain photographs of the disputed strip of land.

We conclude that there is evidence in the record to support the court's determination that no gap existed between the parties' properties. The court's determination, therefore, is not clearly erroneous.

### III

The plaintiffs next claim that the court improperly failed to find a latent ambiguity in the deed descriptions of the parties' properties. We disagree.

"The principles guiding our construction of land conveyance instruments, such as the [deeds] at issue in this appeal, are well established. The construction of a deed . . . presents a question of law which we have plenary power to resolve. . . . In determining the location of a boundary line expressed in a deed, if the description is clear and unambiguous, it governs and

---

[3] In its memorandum of decision, the court stated in a footnote that the "1900 neighborhood map . . . may not have been measured accurately."

[4] See footnote 5.

the actual intent of the parties is irrelevant." (Citations omitted; internal quotation marks omitted.) *Lisiewski* v. *Seidel*, 72 Conn. App. 861, 866, 806 A.2d 1121, cert. denied, 262 Conn. 921, 922, 812 A.2d 865 (2002). "A latent ambiguity arises from extraneous or collateral facts that make the meaning of a deed uncertain although its language is clear and unambiguous on its face." (Internal quotation marks omitted.) *Mackie* v. *Hull*, 69 Conn. App. 538, 542, 795 A.2d 1280, cert. denied, 261 Conn. 916, 917, 806 A.2d 1055 (2002).

The plaintiffs concede that the deed descriptions of the parties' properties are not ambiguous on their face. They contend, however, that the deed descriptions are latently ambiguous because the descriptions, when read together, do not reveal the existence of a gap between the parties' properties, but "at trial it was obvious that there is a gap between the respective lands of the parties."[5]

In light of our prior conclusion that the court's determination that there is no gap between the parties' properties was not improper, we conclude that the plaintiffs' claim is without merit.

## IV

Finally, the plaintiffs claim that the court improperly failed to find that they had acquired title to the disputed strip of land by adverse possession. We disagree.

---

[5] The relevant portion of the plaintiffs' deed describes their property as being bounded northerly "[b]y Lots Nos. 28, 29 and 30, as shown on [a 1978 subdivision map], partly by each, in all, One Hundred Twenty and Four One-Hundredths (120.04) feet." The southerly portions of lots 28, 29 and 30 make up the defendants' property. The relevant portion of the defendants' deed describes their property as being bounded southerly "[b]y land now or formerly of Myra E. Stoddard, 150 feet," which is now the plaintiffs' property. Thus, the plaintiffs' deed describes their property as being bounded northerly by the defendants' property, and the defendants' deed describes their property as being bounded southerly by the plaintiffs' property.

"[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner." (Internal quotation marks omitted.) *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 842, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002).

A finding of adverse possession is to be made out "by clear and positive proof. . . . '[C]lear and convincing proof' . . . denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . The burden of proof is on the party claiming adverse possession. . . .

"Despite that exacting standard, our scope of review is limited. Adverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are legally or logically necessarily inconsistent with that conclusion." (Citations omitted; internal quotation marks omitted.) Id., 844.

In rejecting the plaintiffs' adverse possession claim, the court stated: "In this case, the plaintiffs presented some evidence that they maintained open and exclusive possession of the disputed strip of land since the time

that they purchased [their property] in 1994. However, their predecessors in title, Rose and Joseph Perfito, who acquired the property in 1982, did not testify. The only witness to support the plaintiffs' claim concerning the time period before 1994 was Chester Choinski, who had lived across the street at 83 Summit Street since 1980. Choinski testified that he never saw Jose Tomas on the south side of the [wooden] fence, that the Perfitos mowed the lawn on the south side of the fence, and that they had a garden that went right up to the fence. His testimony, however, was in general terms. He did not focus or even identify the specific strip of disputed property. Nor did or could he establish that the Perfitos ousted the [defendants] of this strip of property for the entire time period from 1985 to 1994 without interruption. In short, in the absence of testimony from the Perfitos, the evidence did not clearly and convincingly establish that the plaintiffs and their predecessors in title kept [the defendants] out of the disputed strip of land 'uninterruptedly for fifteen years by an open, visible, and exclusive possession under a claim of right with intent to use the property as [their] own and without the consent of the owner[s].' "

On the basis of our review of the record, we conclude that the evidentiary facts are legally or logically consistent with the court's conclusion that the plaintiffs failed to establish their claim of adverse possession by clear and convincing evidence. Accordingly, the court properly rendered judgment in favor of the defendants on the plaintiffs' adverse possession claim.

The judgment is affirmed.

In this opinion the other judges concurred.