******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# APPENDIX

## BERT BRANDER *v.* TRISHA STODDARD,
## TEMPORARY ADMINISTRATOR
## (ESTATE OF LILY B. FREY),
## ET AL.*

Superior Court, Judicial District of Litchfield
File No. CV-13-6008351-S
Memorandum filed August 6, 2015

*Proceedings*

Memorandum of decision in action to quiet title. *Judgment for the defendants.*

*Patrick E. Power*, for the plaintiff.

*John L. Laudati*, for the defendants.

*Casey Walker*, pro hac vice, for the named defendant et al.

*Opinion*

MARANO, J. The plaintiff, Bert Brander, brings this cause of action against the defendants, Trisha Stoddard, in her capacities as Connecticut temporary administrator of the estate of Lily Frey and Florida personal representative of the estate of Lily Frey, and the Farmington River Watershed Association, Inc. In his two count complaint, filed with the court on March 25, 2013, the plaintiff seeks to quiet title to property located at 65 Farmington River Turnpike, New Hartford, Connecticut (disputed property), based on claims of adverse possession and prescriptive easement. The defendants filed an answer on June 21, 2013, and an amended answer and special defenses on February 13, 2015, alleging that the plaintiff's use of the property was with the permission of the owners. The matter was tried to the court on February 10 and 11, 2015. The parties filed posttrial briefs on May 4, 2015.

## PARTIES' POSITIONS

### Plaintiff's Position

The plaintiff argues that he acquired the entire disputed property through adverse possession pursuant to General Statutes § 52-575. In support of this argument, the plaintiff alleges that from 1984 to the present he has used the disputed property to graze his sheep and to grow hay. While conceding that the titleholders to the property erected a fence between the plaintiff's property and the disputed property in 1993, he alleges that within a year he removed the fence and resumed use of the property for grazing sheep and growing hay. He further argues that any other use of the land by the titleholders was insufficient to overcome his possession of the property. He also argues that any initial permission that was granted by the titleholders to the plaintiff to use the disputed property for grazing and haying was revoked in 1993 when they erected a fence and he continued to use the property for grazing and haying from 1993 to the present, a period in excess of the fifteen years mandated by § 52-575.

In the alternative, the plaintiff argues that he has acquired a prescriptive easement over the disputed property to graze sheep and grow hay. He argues that the only difference in proof between a claim of adverse possession and a claim of prescriptive easement is that with a prescriptive easement possession need not be exclusive. Therefore, he argues that, for the same reasons that he has satisfied the elements of adverse possession, if the court were to find that his use of the property was not exclusive, he would still satisfy the elements of a prescriptive easement. He further argues that such a prescriptive easement would be an easement appurtenant because use of the disputed property for grazing and haying benefits the dominant estate, the adjacent Brander property, and not the plaintiff person-

ally. Specifically, he argues that he would derive no personal benefit from an easement over the disputed property to graze sheep and grow hay if he were not raising sheep on his adjacent property.

## Defendants' Position

The defendants argue that the plaintiff has failed to make out a prima facie case of adverse possession. Specifically, they argue that the plaintiff has failed to satisfy the fifteen year time period or proven that he acted under a claim of right because as late as 1998 he represented to the town of New Hartford that Henry and Lily Frey (Freys) were the titleholders to the disputed property. They further argue that he has not proven that he acted under a claim of right and absent permission because from 1984 to 1993 he used the disputed property with the belief that the Freys would leave the disputed property to him in their will and a belief in a future claim to the property is not a present claim of right. They further argue that the plaintiff has not proven that he had exclusive possession of the property because the Freys took steps to build a single-family residence on the property, the plaintiff knew of the Freys' actions, and the plaintiff never objected on the ground that he had exclusive possession of the property. They also argue that on several occasions the plaintiff delivered lamb meat to Lily Frey as "rent" for the disputed property, which is inconsistent with a claim of right to the property. They argue that the Freys gave the plaintiff permission to graze his sheep and grow hay on the disputed property.

In regard to the plaintiff's claim of a prescriptive easement, the defendants first argue that any claim for such a prescriptive easement should be considered an easement in gross because the benefit runs to the plaintiff personally and not the Brander property. The defendants also argue that the plaintiff has failed to make a prima facie case of prescriptive easement because the plaintiff acknowledged that the Freys were the owners of the property in 1998 to the town of New Hartford and such acknowledgment contradicts any alleged claim of right on the part of the plaintiff. They further argue that any use of the disputed property by the plaintiff was with the permission of the Freys. Therefore, they argue that the plaintiff cannot succeed in his claim of prescriptive easement.

## FINDINGS OF FACT

As the trier of fact, the court must resolve issues of credibility. See *State* v. *Nowell*, 262 Conn. 686, 695, 817 A.2d 76 (2003); *Lacic* v. *Tomas*, 78 Conn. App. 406, 409–10, 829 A.2d 1, cert. denied, 266 Conn. 922, 835 A.2d 472 (2003). "The determination of a witness' credibility is the special function of the trial court." (Internal quotation marks omitted.) *State* v. *Knight*, 266 Conn. 658, 674, 835 A.2d 47 (2003). "[I]t is the trier's exclusive

province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Hoffer* v. *Swan Lake Assn.*, *Inc.*, 66 Conn. App. 858, 861, 786 A.2d 436 (2001). The court finds the following facts and credits the following evidence.

In 1967, Henry Frey purchased property in New Hartford, Connecticut, commonly known as the Ryan Farm. Plaintiff's exhibit 12. In 1981, Henry Frey transferred the property to himself and to Lily Frey[1] as joint tenants with right of survivorship. Plaintiff's exhibit 2. In 1984, the Freys sold a portion of the property, located at 24 Farmington River Turnpike, New Hartford, Connecticut (Brander property), to the plaintiff. Plaintiff's exhibit 4. The plaintiff subsequently transferred the Brander property to Branderville Ltd., a Connecticut company of which the plaintiff owns a majority interest. Plaintiff's exhibit 25. The Freys retained the disputed property, which is adjacent to the Brander property, as well as adjacent property located across the Farmington River Turnpike from the Brander and disputed properties on which the Freys resided and conducted farming activities. At the time of the sale of the Brander property to the plaintiff, the defendants represented to the plaintiff that if he purchased the Brander property at that time, then they would leave the disputed property to him in their wills.

In 1984, the plaintiff purchased some sheep and began raising them on the Brander property. At the same time, he utilized the disputed property to grow hay to feed the sheep. He used both properties to graze the sheep, making use of portable, plastic fencing to corral the sheep within certain areas. Within a year of purchasing the Brander property, he constructed a fence along the boundary of both properties with the Farmington River Turnpike. Henry Frey offered guidance and advice to the plaintiff, based on his farming experience, regarding raising sheep and the proper construction of a fence. The Freys moved to Virginia in 1986 and ceased to reside at the property across the Farmington River Turnpike from the disputed property.

In or about 1993, the plaintiff and the Freys experienced a falling out. In August, 1993, the Freys listed the disputed property for sale. Plaintiff's exhibit 5. A for sale sign was placed on the disputed property. In response, the plaintiff filed a lawsuit against the Freys. The plaintiff testified that he does not remember what claims or remedies he pursued in the lawsuit. Henry Frey, Jr. (Hank Frey), Henry Frey's son and Lily Frey's stepson, testified that the plaintiff was seeking to recover from the Freys the value of the improvements and maintenance he had previously performed on the disputed property. The court finds Hank Frey's testimony concerning the lawsuit credible. The Freys coun-

terclaimed. In 1994, the Freys, through their counsel, sent a cease and desist letter to the plaintiff, demanding that he stop using the disputed property, remove all of his personal property from the disputed property, and notifying him that they intended to remove the fence that he had erected on the disputed property along the Farmington River Turnpike. Plaintiff's exhibit 6. In addition, they instructed Hank Frey to erect a fence between the Brander and disputed properties. Hank Frey hired contractors who constructed the boundary fence. In 1995, the parties settled their claims against each other. As part of the settlement, on March 23, 1995, the Freys signed a release of all counterclaims they had against the plaintiff and paid a sum of money to the plaintiff for the value of the improvements he made to the disputed property. Plaintiff's exhibit 8.

In 1994 or 1995, the plaintiff removed the fence that the Freys had erected between the properties. After removing the dividing fence, the plaintiff continued to use the disputed property to grow hay and to graze his sheep. Such conduct continued through the commencement of the present cause of action.

In 1994, while litigation between the parties was still pending, the Freys executed new wills, removing the provision whereby the plaintiff would inherit the disputed property upon their deaths. On January 24, 1995, the Freys' counsel sent a letter to the plaintiff's counsel notifying him that the Freys had revised their wills. Plaintiff's exhibit 7.

In March, 1998, the plaintiff appealed to the Superior Court, judicial district of Litchfield, the New Hartford Inland Wetlands Commission's approval of a permit granted to Henry Frey for filling wetlands and excavation and expansion of a pond "on his property located on Farmington River Turnpike in the Town of New Hartford." Defendants' exhibits J and K. The plaintiff alleged aggrievement as an abutting property owner. Defendants' exhibit K. Specifically, he alleged that the Inland Wetlands Commission acted illegally, arbitrarily, and in abuse of its discretion by: accepting an application that was incomplete under the applicable regulations, failing to provide proper notice to abutting property owners, failing to make a finding that a feasible and prudent alternative did not exist, and failing to state on the record the reasons for its findings. Id. On September 11, 1998, the court, *Pickett, J.*, dismissed the plaintiff's appeal. Id.

In 1999, the Freys took steps to construct a single-family home on the disputed property, including seeking permit approvals for such construction. On November 23, 1999, the plaintiff sent a letter to the Inland Wetlands Commission raising concerns with the proposed construction. Defendants' Exhibit CC. Specifically, he raised the possibility, due to the location of the property in a flood plain and the presence of wet-

lands on the property, that additional approvals would be required from the U.S. Army Corps of Engineers, the state of Connecticut, and the Metropolitan District Commission. Id. On December 10, 1999, the plaintiff submitted an additional letter raising concerns with the proposed construction, including the failure of the Freys to adequately maintain the pond on the property, the lack of expert testimony concerning possible wetlands on the property, and previous issues with the engineer working on the project. Id.

In 2001 or 2002, in furtherance of the plan to build a single-family residence, Henry Frey went with Hank Frey to the disputed property. While on the property Henry Frey indicated where on the property he wished to place the home. They then placed four stakes into the ground where the corners of the residence would be located. On a later date, Hank Frey returned to the property with the Freys' architect to show him where on the property Henry Frey wished the residence to be located. While Hank Frey does not specifically recall seeing the stakes on the subsequent visit, the court credits his testimony that he would not have been able to indicate to the architect where the residence was intended to be located if the stakes were not still in place.

In 2002, Henry Frey passed away. Upon Henry Frey's death, the disputed property passed to Lily Frey as a result of the joint tenancy with right of survivorship established by the 1981 deed. Plaintiff's exhibit 3. No evidence was presented to the court that the plaintiff challenged the transfer of the 100 percent undivided interest in the property to Lily Frey. Between 1993, when the plaintiff commenced his cause of action against the Freys, and Henry Frey's death in 2002, the plaintiff and Henry Frey did not speak with each other. In 2004, the plaintiff and Lily Frey began communicating again.

After Henry Frey's death, Lily Frey continued to take steps to carry out their plan of building a single-family residence on the disputed property. In 2004, the plaintiff was present in Lily Frey's home in Avon, Connecticut, when she met with her attorney, Roman Garbacik, and her architect to discuss the construction plans. Lily Frey asked the plaintiff if he wished to be the construction manager for the project, but he declined on the ground that he was too busy with his business. The plaintiff told Lily Frey that he objected to the plans because he felt Lily Frey was, at ninety-two years of age, a "little old to decide to build a house." Transcript, February 10, 2015, a.m. session, p. 85, ll. 10–11. The plaintiff also testified that he objected to the plans because he "didn't want anyone building on the property [he] was using." Id., ll. 2–3. He did not, however, raise this concern with Lily Frey, her attorney, or any other party involved in planning the residence, because he "didn't want to start

any more problems." Id., l. 14.

Between 2003 and 2004, Garbacik visited the disputed property on at least three occasions to carry out tasks related to the planning of the single-family residence. On those occasions he was accompanied by other individuals including the architect, a surveyor, and the building inspector.

At some point between 2004 and 2005, Garbacik testified that he was present in Lily Frey's Avon, Connecticut, home when he observed the plaintiff deliver a package of lamb meat to Lily Frey and say, "This is the rent." Transcript, February 10, 2015, p.m. session, p. 55, ll. 21–27. Garbacik testified that he interpreted the plaintiff's statement to mean that it was rent for use of the disputed property. While the court credits Garbacik's testimony that he observed the plaintiff deliver lamb meat to Lily Frey at her Avon, Connecticut, home, the court disagrees with Garbacik's interpretation of the purpose of such delivery. The court interprets the plaintiff's conduct to be a gift of appreciation to his aunt, Lily Frey, for the continued use of the property to graze his sheep and grow hay rather than a rent payment.

In 2005, Lily Frey, through Garbacik, applied with the New Hartford Planning and Zoning Commission for approval of a special permit to construct a smaller, single-family residence on the disputed property. A public hearing was held on February 9, 2005, at which time the application was approved. Defendants' exhibit DD. The plaintiff did not challenge the application on the ground that he was the owner of the property in question. The plaintiff testified, however, that he did not raise ownership as a ground for challenging the application because that was not a valid reason for the Planning and Zoning Commission to deny a permit application, which he knew because he had served on numerous land use boards in New Hartford, including the Planning and Zoning Commission. Transcript, February 11, 2015, p. 36, ll. 1–8 and 15.

Also after Henry Frey's death, Lily Frey took steps to donate the disputed property to the Farmington River Watershed Association (association). In 2003, the association became aware of Lily's Frey's desire to leave the disputed property to the association upon her death. At Lily Frey's request, Hank Frey met with the association's director and others at the disputed property to show them the site. Lily Frey also executed a new will leaving the disputed property to the association. The terms of the bequest stated that the land would remain undeveloped, the association would host an annual fishing derby for underprivileged children on the land, and the association would erect a structure with a sign memorializing Henry and Lily Frey.

In February, 2005, Lily Frey moved to Vero Beach, Florida, into a home located next door to Stoddard.

Stoddard and Lily Frey met in May, 2005, and developed a friendship. On multiple occasions the plaintiff visited Lily Frey at her home in Florida. Stoddard testified that on one such occasion she was present in Lily Frey's home and observed the plaintiff placing packages of lamb meat in Lily Frey's freezer. She testified that the plaintiff stated that bringing the meat was "the least I could do; I graze my sheep on her land." Transcript, February 10, 2015, p.m. session, p. 65, l. 18. The plaintiff testified that he never delivered lamb meat to Lily Frey in Florida. The court does not credit Stoddard's testimony that she witnessed a delivery of lamb meat to Lily Frey at her Florida residence. The court finds it more likely that Stoddard, in hindsight, interpreted a different interaction between the plaintiff and Lily Frey as a delivery of lamb's meat.

Stoddard further testified that in 2006 she overheard an argument between Lily Frey and the plaintiff concerning Lily Frey's will. She testified that after learning that Lily Frey intended to leave the disputed property to the association, the plaintiff became angry and told her, "I'm not going to do anything else for you. You make the repairs. You fix everything. You mow it. You take care of everything. If you want to give it to them, give it. I'm not doing anything else for you." Id., p. 69, ll. 4–8. The court credits Stoddard's testimony.

Lily Frey passed away in June, 2006. Stoddard was appointed personal representative of Lily Frey's estate in Florida and temporary administrator of her estate in Connecticut. Stoddard submitted Lily Frey's will, leaving the disputed property to the association, to probate. In 2006, the plaintiff commenced an action in Florida contesting Lily Frey's will on the grounds of undue influence and lack of testamentary capacity.

In 2009, the plaintiff applied to the New Hartford Inland Wetlands Commission for a declaratory ruling allowing him to clean out a brook on the disputed property. Plaintiff's exhibit 9. In his application, the plaintiff listed the location of the proposed activity as "24 Farmington [River] Road," the address of the Brander property. Id. The application does not list the address of the disputed property. Id. On June 22, 2009, the Inland Wetlands Commission approved the declaratory ruling for "Bert Brander, 24 Farmington River Road, Clean out Brook." Plaintiff's exhibit 10. It published notice of the approval with the same language in the Hartford Courant in the June 30, 2009 issue. Plaintiff's exhibit 11. Within ninety days of the declaratory ruling, the plaintiff entered the disputed property with a mini excavator and broke up beaver dams that were blocking the brook and cleared out debris so that the brook would flow freely.

DISCUSSION

Adverse Possession

"It has long been the law in Connecticut that [t]he doctrine of adverse possession is to be taken strictly." (Internal quotation marks omitted.) *Lisiewski* v. *Seidel*, 95 Conn. App. 696, 711, 899 A.2d 59 (2006). "A finding of adverse possession is to be made out by clear and positive proof. . . . [C]lear and convincing proof . . . denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier [of fact] a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . The burden of proof is on the party claiming adverse possession." (Internal quotation marks omitted.) Id., 701.

"The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner." (Internal quotation marks omitted.) *Anderson* v. *Poirier*, 121 Conn. App. 748, 752, 997 A.2d 604, cert. denied, 298 Conn. 904, 3 A.3d 68 (2010); see also General Statutes § 52-575.[2]

"[A] claim of right does not necessarily mean that the adverse possessor claims that it is the proper title-holder, but that it has the intent to disregard the true owner's right to possession. *Horowitz* v. *F. E. Spencer Co.*, 132 Conn. 373, 378, 44 A.2d 702 (1945); *Mentz* v. *Greenwich*, 118 Conn. 137, 146, 171 A. 10 (1934)." (Internal quotation marks omitted.) *Eberhardt* v. *Imperial Construction Services, LLC*, 101 Conn. App. 762, 768, 923 A.2d 785, cert. denied, 284 Conn. 904, 931 A.2d 263 (2007). In other words, a claim of right requires that the party seeking title through adverse possession must "[manifest] her unequivocal intent 'to use the property as her own and without the consent of the owner.' *1525 Highland Associates, LLC* v. *Fohl*, 62 Conn. App. 612, 622, 772 A.2d 1128, cert. denied, 256 Conn. 919, 774 A.2d 137 (2001)." *Eberhardt* v. *Imperial Construction Services, LLC*, supra, 769.

"An adverse possessor may interrupt his or her continuous possession by acting in a way that acknowledges the superiority of the real owner's title. See *Lazoff* v. *Padgett*, 2 Conn. App. 246, 250, 477 A.2d 155, cert. denied, 194 Conn. 806, 482 A.2d 711 (1984). '[T]he possession of one who recognizes or admits title in another, either by declaration or conduct, is not adverse to the title of such other. . . . Occupation must not only be hostile in its inception, but it must continue hostile, and at all times during the required period of fifteen years challenge the right of the true owner, in order

to found title by adverse use upon it. . . . Such an acknowledgment of the owner's title terminates the running of the statutory period, and any subsequent adverse use starts the clock anew.' . . . *Kramer* v. *Petisi*, 53 Conn. App. 62, 71, 728 A.2d 1097, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999); see also *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, [69 Conn. App. 839, 843–44, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002)]." *Allen* v. *Johnson*, 79 Conn. App. 740, 746, 831 A.2d 282, cert. denied, 266 Conn. 929, 837 A.2d 802 (2003).

Further, "[a]lthough possession that is originally permissive may become hostile, it does so only if [the permission] is 'clearly repudiated by the occupant.' 3 Am. Jur. 2d 149, Adverse Possession § 53 (1986); see also A. Sedgwick & F. Wait, Trial of Title to Land (1882) § 730, p. 508; R. Tyler, Law of Adverse Enjoyment (1876) p. 85. Such repudiation must be shown by 'some clear, positive, and unequivocal act brought home to the owner' or the use will be presumed to be permissive. 3 Am. Jur. 2d, 149, supra; A. Sedgwick & F. Wait, supra, § 749, at p. 539; R. Tyler, supra, at p. 877." *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, supra, 69 Conn. App. 845–46.

" 'In determining what amounts to hostility, the relation that the adverse possessor occupies with reference to the owner is *important*. If the parties are strangers and the possession is open and notorious, it *may* be deemed to be hostile. *However if the parties are related, there may be a presumption that the use is permissive.*' . . . [*Woodhouse* v. *McKee*, 90 Conn. App. 662, 673, 879 A.2d 486 (2005)]." (Emphasis in original.) *Mulle* v. *McCauley*, 102 Conn. App. 803, 812, 927 A.2d 921, cert. denied, 284 Conn. 907, 931 A.2d 265 (2007). "Historically, the existence of a familial relationship between claimants has been [only] a factor in determining whether possession of land is adverse . . . . A family relationship between parties is only one of the facts to be considered [with other facts]. . . . [A] family relationship without more is insufficient to support a finding that the use at the time was with permission. . . . [S]tanding alone a familial relationship neither puts an end to the inquiry regarding permissive use nor shifts the burden of proof. . . . Nevertheless, the familial relationship may be an important factor when evaluated in the context of all the other relevant factors guiding the Court in its resolution of the . . . claim." (Citations omitted; internal quotation marks omitted.) Id., 814–15.

" 'The legal significance of the open and visible element [of adverse possession] is not . . . an inquiry as to whether a record owner subjectively possessed an understanding that a claimant was attempting to claim the owner's property as his own. Rather, the open and visible element requires a fact finder to examine the extent and visibility of the claimant's use of the record

owner's property so as to determine whether a reasonable owner would believe that the claimant was using that property as his or her own.' *Schlichting* v. *Cotter*, 109 Conn. App. 361, 368, 952 A.2d 73, cert. denied, 289 Conn. 944, 959 A.2d 1009 (2008)." *Anderson* v. *Poirier*, supra, 121 Conn. App. 753–54.

" 'In general, exclusive possession can be established by acts, which at the time, considering the state of the land, comport with ownership; viz., such acts as would ordinarily be exercised by an owner in appropriating land to his own use and the exclusion of others. . . . Thus, the claimant's possession need not be absolutely exclusive; it need only be a type of possession which would characterize an owner's use. . . . It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question.' . . . *Roche* v. *Fairfield*, 186 Conn. 490, 502–503, 442 A.2d 911 (1982)." *Mulle* v. *McCauley*, supra, 102 Conn. App. 817.

In the present case, the plaintiff has used the disputed property from 1984 until the present for grazing sheep and growing hay. The court finds, however, that from 1984 until 1995, when the plaintiff, through counsel, received a letter demanding he cease and desist using the disputed property, the plaintiff's use of the property was not under a claim of right and was with the permission of the owners, Henry and Lily Frey. This conclusion is supported by the fact that the plaintiff testified that when he purchased the Brander property in 1983, he believed that the Freys would leave him the disputed property in their wills. The plaintiff's own description of the status of the property evidences that his understanding at the time he began using the disputed property was that he had an interest that would only vest upon the deaths of Henry and Lily Frey. The plaintiff's belief that he would inherit the land in the future does not support a belief that he presently possessed the land to the exclusion of the true owners, the Freys. The court also notes that Hank Frey testified, and the plaintiff did not dispute, that prior to moving to Virginia, Henry Frey provided guidance to the plaintiff on the raising of sheep and construction of fencing on the Brander and disputed properties. Such guidance is indirect evidence that the plaintiff's use of the disputed property to graze sheep and grow hay was with the knowledge and permission of the Freys. Therefore, the court finds that the plaintiff's use of the property from 1983 through 1995 does not satisfy the claim of right element of adverse possession. Thus, any claim of adverse possession by the plaintiff must be based on his use of the property from 1995 forward and must constitute an uninterrupted fifteen year period. At the earliest, the plaintiff could satisfy the statutory period in 2010.

The 1995 demand letter is evidence that, at that time, the Freys revoked their previous grant of permission for the plaintiff to use the disputed property. When the plaintiff promptly reentered the disputed property, removed the boundary fence, and resumed use of the property for grazing and haying, he manifested an intent to possess the property in a manner at odds with the titleholders, the Freys. From 1995 until 2004, the plaintiff had no direct contact with Henry or Lily Frey.

The court finds, however, that in 2004 the plaintiff reconciled with Lily Frey. By his own testimony, the plaintiff did not want to create any more conflict with his aunt after their reconciliation. The plaintiff's behavior toward Lily Frey from their reconciliation to her death in June, 2006, supports a conclusion that he used the disputed property during that time either with her permission or, at the very least, with an understanding that his use was secondary to any use Lily Frey made of the property. Specifically, on at least one occasion the plaintiff brought Lily Frey a gift of lamb meat in appreciation for being able to use the disputed property. Further, the plaintiff was aware of Lily Frey's plan to build a residence on the disputed property and did not challenge her because he did not want to reignite their conflict, despite the fact that the placement of a residence on the disputed property would limit his ability to use the property for grazing sheep and growing hay.

While the plaintiff correctly notes in his posttrial brief that no evidence was presented of a specific conversation between Lily Frey and the plaintiff where he asked and she granted him permission to use the disputed property, lack of such evidence does not determine the outcome of this claim because the plaintiff has the burden to show by clear and convincing evidence that he used the disputed property under a claim of right. See *Lisiewski* v. *Seidel*, supra, 95 Conn. App. 701. Looking at all of the evidence, particularly the plaintiff's deferential conduct toward Lily Frey even when confronted with her plan to use the property in a way that would limit his current use of the property,[3] the plaintiff has not met this heightened burden. Therefore, the court finds that from 2004 until 2006, the plaintiff did not occupy the disputed property under a claim of right. Because the period of adverse use was interrupted in 2004, the plaintiff only continually adversely occupied the disputed property from 1995 to 2004, a period of nine years. A nine year period of possession does not satisfy the statutory period of fifteen years required by § 52-575 (a). Further, any period of possession commencing at the time of Lily Frey's death in June, 2004, could not satisfy the fifteen year period because only eleven years have passed since her death to today.

It is unnecessary to determine whether the plaintiff satisfied all of the other elements of adverse possession because he did not continually occupy the disputed

property under a claim of right without permission for the statutory period of fifteen years. The court concludes that the plaintiff has failed to meet his burden of proving, by clear and convincing evidence, that he has acquired title to the disputed property by way of adverse possession. Therefore, the court finds for the defendants on the claim of adverse possession.

## Prescriptive Easement

General Statutes § 47-37 provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years." "'In applying that section, [our Supreme Court] repeatedly has explained that [a] party claiming to have acquired an easement by prescription must demonstrate that the use [of the property] has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. . . . The purpose of the open and visible requirement is to give the owner of the servient land knowledge and full opportunity to assert his own rights. . . . To satisfy this requirement, the adverse use must be made in such a way that a reasonably diligent owner would learn of its existence, nature, and extent. Open generally means that the use is not made in secret or stealthily. It may also mean that it is visible or apparent. . . . An openly visible and apparent use satisfies the requirement even if the neighbors have no actual knowledge of it. A use that is not open but is so widely known in the community that the owner should be aware of it also satisfies the requirement. . . . Concealed . . . usage cannot serve as the basis [for] a prescriptive claim because it does not put the landowner on notice.' . . . *Waterbury* v. *Washington*, 260 Conn. 506, 576–77, 800 A.2d 1102 (2002)." *Slack* v. *Greene*, 294 Conn. 418, 427–28, 984 A.2d 734 (2009).

"The requirement that the [use] must be exercised under a claim of right does not necessitate proof of a claim actually made and brought to the attention of the owner . . . . It means nothing more than a [use] as of right, that is, without recognition of the right of the landowner, and that phraseology more accurately describes it than to say that it must be under a claim of right. . . . [When] there is no proof of an express permission from the owner of the servient estate, on the one hand, or of an express claim of right by the person or persons using the way, on the other, the character of the [use], whether adverse or permissive, can be determined as an inference from the circumstances of the parties and the nature of the [use]. . . . *Gregory's, Inc.* v. *Baltim*, 142 Conn. 296, 299–300, 113 A.2d 588 (1955). A trier has a wide latitude in drawing an inference that a[use] was under a claim of right. Id., 300." (Internal quotation marks omitted.) *Slack* v. *Greene*, supra, 294 Conn. 428.

"It is well established that evidence that the party claiming a prescriptive use never asked for or was given permission to use the property will support a finding that the use was adverse. See, e.g., [*Gallo*]-*Mure* v. *Tomchik*, 78 Conn. App. 699, 708, 829 A.2d 8 (2003) ([t]he essence of the determination of whether the claim to the property was made as of right is . . . whether the individual claiming the prescriptive easement acknowledged the ownership rights of the landowner in any way); id., 709 (plaintiff's testimony that she did not need permission to use right-of-way supported trial court's determination that she used [it] as if it was her own property, which is the primary indication that the use was not permissive); see also *McManus* v. *Roggi*, 78 Conn. App. 288, 296, 826 A.2d 1275 (2003) (plaintiff's testimony that she never asked for permission to use property at issue supported trial court's determination that use was adverse); *Lisiewski* v. *Seidel*, [72 Conn. App. 861, 874, 806 A.2d 1121] (testimony that permission [to use driveway] was never granted supported determination that use was adverse) [cert. denied, 262 Conn. 921, 922, 812 A.2d 865 (2002)]; *DiSorbo* v. *Grand Associates One Ltd. Partnership*, 8 Conn. App. 203, 206, 512 A.2d 940 (1986) (testimony by plaintiff's husband that he used defendant's driveway whenever he wanted to and that he never sought permission to use [it] supported determination of adverse possession)." (Internal quotation marks omitted.) *Slack* v. *Greene*, supra, 294 Conn. 435–36.

"Moreover, '[i]t is not the plaintiff's burden to establish that an otherwise apparently adverse use of the defendant's property was conducted without the defendant's permission or license. . . . When the defendant raises permission by way of a special or affirmative defense, the burden of proof rests on the defendant . . . who must prove the special defense by a fair preponderance of the evidence.' . . . *Zabaneh* v. *Dan Beard Associates, LLC*, 105 Conn. App. 134, 139–40, 937 A.2d 706, cert. denied, 286 Conn. 916, 945 A.2d 979 (2008). Indeed, a contrary rule would unfairly 'charge a party with proving a negative.' *Lisiewski* v. *Seidel*, [supra, 72 Conn. App. 873]." *Slack* v. *Greene*, supra, 294 Conn. 435.

In the present case, just as with the plaintiff's claim of adverse possession, the plaintiff's claim of a prescriptive easement is dependent upon whether the plaintiff's use was under a claim of right or whether it was with the permission of the Freys. The difference between the two claims, however, is the burden of proof. While the plaintiff had the burden to prove adverse possession by clear and convincing evidence, he must only prove by a preponderance of the evidence the elements of prescriptive easement. Further, for his claim of a prescriptive easement the burden is on the defendants to prove that the plaintiff had permission to use the dis-

puted property for grazing sheep and growing hay.

While the plaintiff has a lesser burden to prove his claim of a prescriptive easement, he has still failed to prevail on his claim. As discussed above, the plaintiff's own testimony evidences that he used the disputed property from 1983 until 1995 with the permission of the Freys. His relationship with the Freys during that time was friendly, with Henry Frey providing guidance to the plaintiff on farming and maintenance of the property.

In 1995, the plaintiff initiated a period of adverse use when he removed the dividing fence between the Brander and disputed properties and resumed grazing sheep and growing hay on the disputed property. The Freys also used the disputed property during this time, performing maintenance to the pond and taking steps to build a residence. Such use does not change the fact that the plaintiff's use was adverse because a claim of prescriptive easement does not require a plaintiff's use of a property to be exclusive.

The period of adverse use ended, however, when the plaintiff reconciled with Lily Frey in 2004. By his own testimony, he did not want to do anything that would jeopardize his relationship with Lily Frey and did not assert any claim to the property with her. In addition, the plaintiff's argument with Lily Frey at her Vero Beach, Florida, home evidences an understanding between the plaintiff and Lily Frey that he was conducting some activities on the disputed property, including mowing the hay, for the benefit of Lily Frey. In light of this evidence, the court finds that the plaintiff has not proven by a preponderance of the evidence that he used the disputed property under a claim of right from 2004 to 2006.

Further, even if the defendant had met his burden of proof that from 2004 to 2006 he used the property under a claim of right, the defendants have met their burden to prove by a preponderance of the evidence that the plaintiff had permission to use the property from 2004 to 2006. Specifically, Garbacik testified that the plaintiff brought a gift of lamb meat to Lily Frey for his use of the disputed property. The court credited his testimony and interprets the gift as an act of appreciation for the use of the property. If the plaintiff was using the property without permission, he would not have a reason to express gratitude to Lily Frey. Further, Stoddard testified that she heard the plaintiff arguing with Lily Frey and, during the argument, the plaintiff stated he would no longer mow or maintain the property. The plaintiff's statement during the argument supports a conclusion that his use of the disputed property, at least insofar as his mowing hay, was for both his own benefit and the benefit of Lily Frey. The court concludes that from 2004 to 2006 it is more likely than not that the plaintiff used the disputed property with Lily Frey's per-

mission.

As with his claim of adverse possession, any adverse use by the plaintiff from 2006 to the present cannot satisfy a claim of prescriptive easement because it will not meet the fifteen year statutory period pursuant to § 47-37. Therefore, the plaintiff has failed to prove a claim of prescriptive easement, and the court finds for the defendants on the plaintiff's claim of a prescriptive easement.

## CONCLUSION

For the foregoing reasons, the court finds for the defendants and against the plaintiff on both counts of the complaint, alleging adverse possession and prescriptive easement.

So ordered.

* Affirmed. *Brander* v. *Stoddard*, 173 Conn. App.    ,    A.3d    (2017).

[1] Frey was the plaintiff's aunt. Henry Frey was her husband, making him the plaintiff's uncle by marriage.

[2] General Statutes § 52-575 (a) provides: "No person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues or within fifteen years next after such person or persons have been ousted from possession of such land or tenements; and every person, not entering as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards; and no such entry shall be sufficient, unless within such fifteen-year period, any person or persons claiming ownership of such lands and tenements and the right of entry and possession thereof against any person or persons who are in actual possession of such lands or tenements, gives notice in writing to the person or persons in possession of the land or tenements of the intention of the person giving the notice to dispute the right of possession of the person or persons to whom such notice is given and to prevent the other party or parties from acquiring such right, and the notice being served and recorded as provided in sections 47-39 and 47-40 shall be deemed an interruption of the use and possession and shall prevent the acquiring of a right thereto by the continuance of the use and possession for any length of time thereafter, provided an action is commenced thereupon within one year next after the recording of such notice. The limitation herein prescribed shall not begin to run against the right of entry of any owner of a remainder or reversionary interest in real estate, which is in the adverse possession of another, until the expiration of the particular estate preceding such remainder or reversionary estate."

[3] The plaintiff's failure to assert his claim to anyone during the period that the Freys were taking steps to build a residence on the disputed property is also evidence that the plaintiff's use of the property was not exclusive.