******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# FRANCIS ANDERSON *v.* COMMISSIONER OF CORRECTION
## (AC 42032)

Alvord, Elgo and Cradle, Js.

*Syllabus*

The petitioner, who had been convicted of assault of a peace officer while incarcerated, sought a writ of habeas corpus, claiming that his trial counsel had rendered ineffective assistance by failing to adequately investigate his case, failing to explain to him the strengths and weaknesses of his case and failing to meaningfully explain the plea offers made to him and the likely range of sentences that he faced. The habeas court rendered judgment denying the petition, concluding, inter alia, that the petitioner had failed to prove that his trial counsel's representation of him was deficient or that he was prejudiced by this alleged deficiency. Thereafter, the habeas court granted the petition for certification to appeal, and the petitioner appealed to this court. On appeal, the petitioner claimed that the habeas court incorrectly concluded that his trial counsel did not provide ineffective assistance by failing to pursue a defense of lack of capacity due to mental disease or defect. *Held* that the judgment of the habeas court denying the petition for a writ of habeas corpus was affirmed; the habeas court having thoroughly addressed the petitioner's argument raised in this appeal, this court adopted the habeas court's well reasoned decision as a proper statement of the relevant facts, issues and the applicable law on those issues.

Argued February 9—officially released June 8, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Farley, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*James P. Sexton*, assigned counsel, with whom, on the brief, were *Megan L. Wade* and *Meryl R. Gersz*, assigned counsel, for the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Jaclyn Preville Delude*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

CRADLE, J. The petitioner, Francis Anderson, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court incorrectly concluded that his trial counsel did not provide ineffective assistance by failing to pursue a defense of lack of capacity due to mental disease or defect (lack of capacity). We affirm the judgment of the habeas court.[1]

On March 3, 2011, the petitioner pleaded guilty to two counts of assault of a peace officer in violation of General Statutes (Rev. to 2009) § 53a-167c. The petitioner's conviction resulted from events that transpired on September 30, 2009, when the petitioner, while serving a prior sentence, assaulted two officers from the Department of Correction. The trial court, *Hon. Terence A. Sullivan,* judge trial referee, sentenced the petitioner to a total effective sentence of five years of incarceration, to be served consecutively to any previous sentence he already was serving.

On February 19, 2013, the petitioner filed an amended petition for a writ of habeas corpus.[2] In his amended petition, the petitioner claimed that his trial counsel, Douglas Ovian, provided ineffective assistance by failing to adequately investigate his case, failing to explain to him the strengths and weaknesses of his case and failing to meaningfully explain the plea offers made to him and the likely range of sentences that he faced.

On July 25, 2018, following a three day trial and the filing of posttrial briefs by the parties, the habeas court, *Farley, J.,* issued a memorandum of decision in which it concluded that the petitioner failed to prove that Ovian's representation of him was deficient or that he was prejudiced by this alleged deficiency. In so concluding, the habeas court began by noting that "[t]he petitioner's case, as presented at trial and in his posttrial brief, focuses specifically upon his attorney's failure to adequately explore and explain a potential defense of lack of capacity, as an alternative to his guilty pleas, and to otherwise provide an effective defense based on the petitioner's mental health issues." The court then set forth the following relevant facts. "[The petitioner] has a long history of violent behavior and mental illness. In the underlying case, [the petitioner] was charged with assaulting two correctional officers when they entered his cell immediately after having, in [the petitioner's] opinion, mistreated another inmate with mental illness. This was not the first such occasion. [The petitioner] has a long history of assaults against correctional officers and others. His psychological issues and behavioral problems date back to his childhood and he has been in and out of correctional facilities since his youth. The incident underlying the conviction that is the subject of this habeas petition occurred in September,

2009, at Northern Correctional Institution. [The petitioner] was charged with two counts of assault [of a peace officer] in violation of General Statutes (Rev. to 2009) § 53a-167c, class C felonies, as well as an infraction for failure to comply with fingerprinting [requirements] in violation of General Statutes § 29-17. The felony counts exposed him to up to twenty years of incarceration and any sentence was required by statute to run consecutively to the sentence he was serving at the time. Subsequently, accounting for his prior history, the state filed [a] part B [information] charging [the petitioner] as a persistent felony offender in violation of General Statutes § 53a-40 (g) and as a persistent serious felony offender in violation of General Statutes § 53a-40 (c). These additional charges increased [the petitioner's] exposure to up to forty years of incarceration. On March 3, 2011, after a jury had been selected, [the petitioner] pleaded guilty to the two assault counts under an open plea, the state having agreed to drop the part B counts in exchange for the guilty plea. Thus, at sentencing [the petitioner] faced a total exposure of twenty years. He was sentenced to five years to serve on each of the two counts, to run concurrently with each other and consecutive to the sentence he was then serving. . . .

"Following [the petitioner's] arraignment on the original charges . . . Ovian was assigned to represent him. At the time . . . Ovian had over twenty years of experience with the Division of Public Defender Services and had served as a public defender in the Tolland judicial district for over three years. [The petitioner] made numerous appearances in court prior to trial. . . . Ovian met with [the petitioner] on these occasions and had the opportunity to explore at length with him the underlying events and his criminal and psychological history. . . . Ovian directed his staff to compile a record of [the petitioner's] mental health history and treatment and to prepare a summary of that history, as well as [the petitioner's] criminal history. Extensive records were obtained, dating back to a psychological evaluation performed by . . . Donald Grayson in 2000, which in turn reviewed [the petitioner's] prior records. It is not clear, however, that . . . Ovian had the entirety of [the petitioner's] mental health records, in particular a 1982 report from Riverview School prepared when [the petitioner] was twelve years old, records from a prior commitment to [what is now] Whiting Forensic [Hospital (Whiting)] in 2005, and some community treatment in 2007. The summary prepared for . . . Ovian, however, does reference the 2005 admission to Whiting, as well as [the petitioner's] childhood history.

"Over the course of the pretrial proceedings in the case . . . Ovian regularly discussed [the petitioner's] mental health issues with him and how those issues might relate to a defense strategy in the case. These

discussions included a 'colloquial' discussion of a potential lack of capacity defense. By 'colloquial' . . . Ovian means a discussion in layman's terms, as distinguished from a technical, legal discussion. The petitioner makes much of the fact that . . . Ovian does not have written notes concerning the discussion of a lack of capacity defense with him. . . . Ovian, however, freely acknowledged areas of his recollection that were unclear and deferred to [the petitioner's] recollection on occasion. He was very clear in recalling that he did address the subject of a potential lack of capacity defense with [the petitioner] and the court credits his testimony on that point despite [the petitioner's] contradictory testimony. It is [the petitioner's] testimony the court finds is not credible. According to [the petitioner] . . . Ovian never discussed the following subjects with him: the facts of the case; the strengths and weaknesses of the case; the minimum and maximum penalties he faced; a plea offer from the state of eighteen months to serve; the option of a court trial rather than a jury trial; and a potential lack of capacity defense. [The petitioner] does acknowledge that he discussed his mental health issues with . . . Ovian, but he maintains that . . . Ovian ignored those issues. The court does not find [the petitioner's] testimony concerning how . . . Ovian conducted the defense and the nature of his dealings with . . . Ovian to be credible.

"Following his initial meetings with [the petitioner] and the review of his mental health history . . . Ovian was of the view that a lack of capacity defense was not a viable option for [the petitioner]. The history reflected diagnoses of post-traumatic stress disorder [PTSD], personality disorder, borderline intellectual functioning and substance abuse. Despite the extensive mental health history, however, it was . . . Ovian's view that the facts did not support a claim that [the petitioner] lacked the capacity either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law. In addition to his assessment that a lack of capacity defense was not viable . . . Ovian also considered the pursuit of that defense as strategically unsound because it would potentially expose [the petitioner] to a period of confinement significantly longer than what could be negotiated in a plea agreement with the state. . . . Ovian raised the subject of [the petitioner's] extensive mental health history with the state in plea negotiations. At one point . . . Ovian obtained a plea offer from the state that would have resulted in an agreed upon sentence of eighteen months to serve. [The petitioner], however, rejected that offer.

"[Ovian] discussed the merits of a lack of capacity defense, in addition to the strategic disadvantages of pursuing that defense, with [the petitioner]. He also checked his own opinion of the merits of such a defense by obtaining an expert opinion on the issue. At the time

of jury selection . . . Ovian referred [the petitioner] to . . . Kenneth Selig, a psychiatrist and an attorney, for evaluation. . . . Ovian testified that, among other things, he discussed the viability of a lack of capacity defense with . . . Selig and, based on that discussion, reaffirmed his view that it was not a viable defense for [the petitioner]. . . . Ovian relayed that opinion to [the petitioner]. [The petitioner] denies ever meeting with . . . Selig, but the transcripts of the proceedings in the underlying case are consistent with the facts as described by . . . Ovian and include references to the lack of capacity issue.

"[The petitioner's] chief concern throughout . . . Ovian's representation was the inadequate mental health care he received as an inmate. This became a focus of the defense strategy in the case, particularly after a video of the underlying events undermined [the petitioner's] claim of self-defense. As the trial approached . . . Ovian pursued a strategy he hoped would limit the potential period during which [the petitioner] would be confined and at the same time raise the possibility that the nature of his confinement would be substantially the same as if he had successfully pursued a lack of capacity defense. To this end . . . Ovian's referral to . . . Selig was aimed at determining whether there were any undiagnosed mental health conditions applicable to [the petitioner] that should be weighed in his sentencing. . . . That effort was unavailing. [Ovian] persisted, however, and negotiated an open plea agreement on the assault charges, subject to the state's further agreement that [the petitioner] would be referred for a psychiatric examination pursuant to General Statutes § 17a-566.[3] That process opened up the prospect that [the petitioner] could plead guilty, cap his exposure to incarceration and still be held in the custody of the Department of Mental Health and Addiction Services at [Whiting]. Despite [the petitioner's] claim to the contrary, the court finds that . . . Ovian explained this strategy and this process to [the petitioner] and informed him that the results of the § 17a-566 examination were uncertain.

"On March 3, 2011, [the petitioner] pleaded guilty under the *Alford* doctrine[4] pursuant to the plea agreement negotiated by . . . Ovian. He was thoroughly canvassed by the court and then referred for an initial examination pursuant to § 17a-566. In advance of the examination, [the petitioner] took issue with one of the examiners assigned to the matter, claiming that she had a bias against him. . . . Ovian looked into that claim, which was counter to his own experience with the examiner, by speaking with her and becoming assured it would not be an issue. The examiners concluded, however, that despite [the petitioner's] extensive history of mental illness and behavioral difficulties, he could be treated appropriately by the Department of Correction and no referral to [Whiting] was recom-

mended. This conclusion was consistent with the opinion expressed orally to . . . Ovian by . . . Selig. [The petitioner] took issue with the results of the examination but, because they were consistent with . . . Selig's conclusions . . . Ovian did not challenge them. Rather than antagonize the state with a request for a continuance and the retention of yet another expert, which . . . Ovian believed might negatively impact the state's position at sentencing . . . Ovian proceeded with the presentence investigation process and sentencing, where the court would have access to the § 17a-566 report and additional background information. The transcript of the sentencing hearing reflects the fact that the court had been provided with the available mental health information, including the § 17a-566 report, that detailed [the petitioner's] childhood abuse, troubled past and extensive psychiatric history. . . . Ovian leaned on those materials in presenting his argument to the court and even invited the court to order further examination of [the petitioner], despite the recommendations in the § 17a-566 report. The court's remarks reflect that these issues were considered by the court in deciding upon a sentence.

"After disposition of the 2009 case, [the petitioner] was again charged with assaulting a correction officer in July, 2012. Attorney Cynthia Love represented [the petitioner] on that charge, which was prosecuted in Norwich. . . . Love referred [the petitioner] for evaluation by . . . Andrew Meisler, a clinical and forensic psychologist. Meisler authored a report dated February 13, 2013, offering his opinions on [the petitioner's] mental condition and the factors that contributed to the 2012 incident. In addition to [the petitioner's] prior diagnoses . . . Meisler diagnosed [the petitioner] with '[c]omplex PTSD' which, as he explained at trial in this case, is a diagnosis that has been considered for recognition but is not currently recognized by the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). It distinguishes a subset of individuals with PTSD who, based on the nature of their underlying trauma, suffer 'much greater disruptions in relationship to others, self-regulation . . . .' In the case of [the petitioner] . . . Meisler's opinion is that certain triggers in his environment cause [the petitioner] to lose the ability to control his behavior. . . . Meisler perceives a pattern of events that lead [the petitioner] into a violent incident, including a change in his surroundings combined with a decrease or elimination of medication therapy and a circumstance in which [the petitioner] perceives a threat that triggers an impulsive, violent reaction.

"With . . . Meisler's support, [the petitioner] went to trial on the 2012 charges and was acquitted on a lack of capacity defense in July, 2013. . . . Meisler was subsequently disclosed as an expert in this case. Pointing out that the 2009 incident followed a transfer of [the petitioner] to Northern Correctional Institution,

what . . . Meisler views as a 'negative assessment by psychiatric staff at Northern [Correctional Institution]' and a discontinuance of medications . . . Meisler believes [that the petitioner] was destabilized at the time of the 2009 incident as well. In response to what [the petitioner] perceived to be unfair treatment of another inmate by correction officers . . . Meisler opines that when [the petitioner] assaulted the correction officers in 2009, he was 'suffering from acute mental illness with marked impairments in emotional regulation and impulse control that prevented him from controlling his behavior in accordance with the law.' " (Footnotes added and omitted.)

With that factual underlayment, the court then addressed the petitioner's claim that Ovian's representation of him was constitutionally deficient because he failed to present a lack of capacity defense.[5] The court reasoned: "The outcome of [the petitioner's] trial arising out of the 2012 charge of assaulting a correction officer unavoidably enhances the effect of hindsight on the defense strategy pursued by . . . Ovian in connection with the 2009 charges. It is essential, therefore, to emphasize that the court has a responsibility in this case to reconstruct the circumstances as they were presented to . . . Ovian and to evaluate the representation he provided from his perspective at the time, not through the prism of hindsight. While . . . Ovian did not consider a lack of capacity defense viable on its merits, he also perceived it as potentially counterproductive. With charges pending that exposed [the petitioner] to forty years of incarceration, a successful lack of capacity defense would nevertheless have left [the petitioner] at risk of being confined for a very long time, subject to future determinations concerning his eligibility for release. See General Statutes § 17a-580 et seq. This prospect stood in contrast to the period of confinement under consideration by the state in plea negotiations, as little as eighteen months at one point. . . . Ovian discussed this strategic consideration with [the petitioner], in addition to the merits of a lack of capacity defense. . . .

"Meisler's testimony in this case establishes, to the court's satisfaction, that a plausible defense of lack of capacity could have been developed and pursued by . . . Ovian. Given the serious and persistent mental health issues exhibited by [the petitioner], and the correlation between those issues and his violent behavior, it was something to consider and the court finds . . . Ovian took the initial steps to look into that defense. Having done so, it was incumbent upon him to obtain a complete mental health history and to obtain a thoroughly informed expert opinion on how [the petitioner's] mental health issues might impact his defense. Having recognized that responsibility . . . Ovian did not carry it out completely. He delegated the task of obtaining the complete history and did not ensure that

task had been properly completed. He recognized the need to consult with an expert early on in the case, but did not do so until the time of jury selection. To the extent that his performance is subject to criticism, these are the principal considerations."

The habeas court analogized the factual circumstances in this case to those presented in this court's earlier decision in *Ramos* v. *Commissioner of Correction*, 172 Conn. App. 282, 159 A.3d 1174, cert. denied, 327 Conn. 904, 170 A.3d 1 (2017). The court explained that, in *Ramos*, the petitioner's counsel had "requested his medical records from the Department of Correction . . . and, upon receipt, forwarded them to . . . Peter Zelman, a forensic psychiatrist. The records obtained from [the Department of Correction], however, belonged to another inmate with the same name but with far fewer psychiatric issues and a much less severe drug history than the petitioner. This error was not discovered by [the petitioner's counsel] during her representation of the petitioner. The habeas petition alleged [the petitioner's counsel] rendered ineffective assistance based on her failure to ensure that the records relied upon by . . . Zelman were accurate. The court agreed that counsel had fallen short of her responsibilities because she had 'assumed an obligation to conduct her investigation in a constitutionally adequate manner, which required her to obtain and furnish accurate medical information to the expert with whom she consulted . . . so that the expert's opinion would be well-grounded and she could appropriately rely upon it in developing her case strategy and advising her client whether to go to trial.' Id., 300–301."

With *Ramos* in mind, the habeas court reasoned: "Like [the petitioner's counsel in *Ramos*] . . . Ovian erred by not ensuring that his office had obtained a complete set of [the petitioner's] mental health records. It was not his intention to do anything less than that and he relied on his staff to complete that task, but still it remained his responsibility."[6]

The court continued: "The court's analysis of . . . Ovian's performance is complicated by the fact that there was a substantial strategic consideration overlaying the incomplete investigation of a defense based on lack of capacity. Even if . . . Ovian had determined that a lack of capacity defense was conceivable, it was also his view that pursuing that defense was not the wisest strategy, given the difference between [the petitioner's] exposure and the prison time being contemplated in plea negotiations. [Ovian] believed that [the petitioner's] mental health issues could be put to better use in attempting to negotiate a plea agreement that would limit the length of [the petitioner's] confinement and also create an opportunity to argue that [the petitioner] should be confined at Whiting. That is the strategy he discussed with [the petitioner] extensively and

the one that ultimately played out at the time of the plea and sentencing. . . .

"First, the court does not agree that . . . Ovian's pursuit of a mitigation strategy on the basis of [the petitioner's] mental health problems, rather than a lack of capacity defense, was deficient. This was a strategic decision, explained in detail to [the petitioner], which was not principally based upon the merits of a potential lack of capacity defense, but rather a strategy that . . . Ovian believed was in [the petitioner's] overall best interests. '[T]o establish deficient performance by counsel, a defendant must show that, considering all of the circumstances, counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms . . . . Moreover, strategic decisions of counsel, although not entirely immune from review, are entitled to substantial deference by the court.' . . . *Skakel* v. *Commissioner of Correction*, 329 Conn. 1, 31, [188 A.3d 1] (2018), [cert. denied, U.S.     , 139 S. Ct. 788, 202 L. Ed. 2d 569 (2019)]. While strategic decisions do not excuse inadequate investigations, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' Id., 32, quoting *Strickland* v. *Washington*, [466 U.S. 668, 690–91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. In this case, based on the totality of the circumstances, the court concludes that . . . Ovian's decision to pursue a mitigation strategy met the standard of objective reasonableness, even though he and . . . Selig did not have a complete set of [the petitioner's] mental health records. They both did have access to . . . Grayson's 2000 evaluation, which . . . Meisler himself characterized as 'a thorough record review and evaluation,' as well as [the petitioner's] extensive, more recent records from [the Department of Correction]. Whatever information the missing records might have added, the court concludes they would not have changed . . . Ovian's strategy, which was based upon his perception that it was not in [the petitioner's] best interests to pursue a lack of capacity defense. That was a strategic decision entitled to substantial deference. See *Pladsen* v. *Commissioner of Correction*, 96 Conn. App. 849, [850–51], 902 A.2d 704 (2006) (same strategy pursued by . . . Ovian was not ineffective assistance of counsel)."[7] (Citations omitted.)

On the basis of the foregoing, the court concluded: "In sum, while . . . Ovian's performance may be subject to some legitimate criticism relating to the failure to obtain a complete medical history . . . in the totality of the circumstances these shortcomings do not constitute 'errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the [s]ixth [a]mendment.' *Skakel* v. *Commissioner of Correction*, supra, 329 Conn. 30, quoting *Strickland* v. *Washington*, [supra] 466 U.S. 687." The court also concluded that

the petitioner failed to prove that he was prejudiced by Ovian's allegedly deficient representation of him. Accordingly, the court denied the petition for a writ of habeas corpus. The court thereafter granted the petitioner's petition for certification to appeal, and this appeal followed.

The standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . .

"On appeal, [a]lthough the underlying historical facts found by the habeas court may not be disturbed unless they [are] clearly erroneous, whether those facts constituted a violation of the petitioner's rights [to the effective assistance of counsel] under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Jordan* v. *Commissioner of Correction*, 197 Conn. App. 822, 830–31, 234 A.3d 78, cert. granted, 335 Conn. 931, 236 A.3d 218 (2020).

On appeal, the petitioner claims that the habeas court erred in rejecting his claim that Ovian rendered ineffective assistance of counsel by failing to pursue a lack of capacity defense. Specifically, the petitioner claims that the habeas court erred in concluding that Ovian's representation was not deficient because it erroneously assumed that Ovian would still have pursued a mitigation strategy, versus a lack of capacity defense, if he had obtained all of the petitioner's medical records, and his trial strategy did not advance the petitioner's litigation objective, which, in this case, was to obtain mental health treatment at Whiting.

We have examined the record on appeal, the briefs and arguments of the parties, and conclude that the judgment of the habeas court, *Farley*, *J.*, should be affirmed. Because the habeas court thoroughly addressed the petitioner's argument raised in this appeal that Ovian's representation of him was constitu-

tionally deficient, we adopt its well reasoned decision, as quoted at length herein, as a proper statement of both the facts and the applicable law on that issue. Any further discussion by this court would serve no useful purpose. See, e.g., *Woodruff* v. *Hemingway*, 297 Conn. 317, 321, 2 A.3d 857 (2010); *Brander* v. *Stoddard*, 173 Conn. App. 730, 732, 164 A.3d 889, cert. denied, 327 Conn. 928, 171 A.3d 456 (2017).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner also challenges the habeas court's determination that he failed to prove that he was prejudiced by his counsel's representation of him. Because we conclude that the habeas court correctly determined that his counsel's performance was not constitutionally deficient, we do not reach the petitioner's prejudice claim. See, e.g., *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 606, 103 A.3d 954 (2014) (reviewing court can find against petitioner on either performance or prejudice prong of ineffective assistance of counsel claim).

[2] The petitioner initially filed a petition for a writ of habeas corpus on May 19, 2011.

[3] General Statutes § 17a-566 provides in relevant part: "(a) Except as provided in section 17a-574 any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers . . . may if it appears to the court that such person has psychiatric disabilities and is dangerous to himself or others, upon its own motion or upon request of any of the persons enumerated in subsection (b) of this section and a subsequent finding that such request is justified, order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the hospital. Upon completion of such examination the examiner shall report in writing to the court. Such report shall indicate whether the convicted defendant should be committed to the diagnostic unit of the hospital for additional examination or should be sentenced in accordance with the conviction. . . .

"(b) The request for such examination may be made by the state's attorney or assistant state's attorney who prosecuted the defendant for an offense specified in this section, or by the defendant or his attorney in his behalf. . . ."

In 2018, the statute was amended to replace references to "division" and "institute" with "hospital" to reflect the name change of the Whiting Forensic Division of Connecticut Valley Hospital, formerly Whiting Forensic Institute, to Whiting Forensic Hospital.

[4] "Under *North Carolina* v. *Alford*, [400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)], a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Walker*, 187 Conn. App. 776, 778 n.2, 204 A.3d 38, cert. denied, 331 Conn. 914, 204 A.3d 703 (2019).

[5] The habeas court stated that the petitioner claimed, at trial and in his posttrial brief, that Ovian's representation of him was deficient because Ovian "conducted the majority of the defense without consulting with an expert regarding a potential lack of capacity defense, waiting until the eve of trial to retain . . . Selig; failed to properly supervise his staff charged with the responsibility to compile the records of [the petitioner's] mental health history; failed to obtain all the mental health records and provide them to . . . Selig; failed to keep [the petitioner] informed and failed to explain to him all potential defenses and the potential mitigating impacts arising out of his mental health condition; limited the scope of . . . Selig's inquiry to what treatment would be appropriate for [the petitioner] were he to be released to the community; failed to retain an expert and challenge the recommendations in the § 17a-566 report; failed to make proper use of the § 17a-566 report and other mental health records at the sentencing hearing; and failed to maintain thorough notes on all the conversations he had while conducting [the petitioner's] defense." Because the petitioner's challenge on appeal is focused on Ovian's failure to obtain all of the petition-

er's mental health records and to present a lack of capacity defense, we focus on the portions of the habeas court's analysis that address those issues.

[6] We note that, in *Ramos*, the habeas court did not find that the petitioner's counsel was constitutionally ineffective. This court rejected the petitioner's challenge to the habeas court's judgment in *Ramos* on the ground that he failed to satisfy the prejudice prong of his ineffective assistance claim. See *Ramos* v. *Commissioner of Correction*, supra, 172 Conn. App. 301–302. This court noted, however, that it was "at least debatable among jurists of reason whether the making of such a mistake when reviewing critical medical records that purportedly belong to one's own client satisfies the minimum requirements of our state and federal constitutions as to the adequacy of trial counsel's performance." Id., 301.

[7] We note that Meisler acknowledged that Grayson's report, which Ovian had obtained and forwarded to Selig, provided a thorough review of the petitioner's mental health history. Therefore, any records obtained by Ovian pertaining to the time period covered in Grayson's report would have been cumulative of the records that Ovian had obtained and given to Selig.

———————————————